MART MUHLBACH, ADMINISTRATOR, APPELLANT, V. OMAHA
LIFE INSURANCE COMPANY, APPELLEE.

FILED NOVEMBER 26, 1921. No. 21680.

1. Insurance: CONTRACT. A life insurance risk, before the issuance
   of a policy for which an application has been made, is not
   assumed until the minds of both applicant and insurer meet on
   definite terms to that effect.

2. ————: ————. An application for a life insurance policy to bear
   the same date as the application, a letter from the insurer to the
   applicant, acknowledging the receipt of the application with
   settlement for the first annual premium, and a receipt for the
   first annual premium, containing a promise to return the full
   amount received, if the policy should not be issued, *held* not to
   constitute a present binding contract of life insurance before the
   issuance of a policy, where those documents show that the pre-
   mium was accepted subject to the further physical examination
   of the applicant and to the subsequent approval of the risk.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE. *Affirmed.*

*Thomas Lynch* and *Byron G. Burbank,* for appellant.

*Gurley, Fitch, West & Hickman, contra.*

Heard before MORRISSEY, C. J., ROSE, ALDRICH and
FLANSBURG, JJ., BROWN and ELDRED, District Judges.

ROSE, J.

This is an action to recover insurance in the sum of
$10,000 on the life of Nicholas Muhlbach. It is alleged
in the petition that the insurance is payable to his estate
and that plaintiff is the administrator thereof. The
action is based on life insurance for $5,000, with a pro-
vision for double that amount in the event of insured's
death by accident. The application for insurance was
dated January 17, 1919, and an annual premium of
$162.40 was then paid. Four days later the lifeless body
of the applicant was found on the ground, where he had
apparently fallen from a windmill. Defendant never

issued the policy for which the application had been made, nor any other formal policy, and denied the existence of the insurance contract pleaded by plaintiff, and tendered back the premium. Upon a trial to a jury the court below directed a verdict in favor of defendant, and from a dismissal of the action plaintiff has appealed.

The controlling question is the existence of a life insurance contract between defendant and the applicant at the time of the latter's death. Plaintiff relies upon the application, upon the payment of the first annual premium when the application was made, and upon the terms of a letter acknowledging defendant's receipt of the application and the premium while the applicant was alive and in good health.

The application appears on a regular form furnished by defendant. In it the applicant gives his age as 21, his occupation as farmer, and his residence as Mullen, Nebraska. He names his estate as beneficiary. After answering "no" in his application to questions inquiring if he had ever been rejected as an insurance risk, if he had ever been intemperate, if he ever had any serious illness, and if there had ever been consumption or insanity in his family, he subscribed to the following:

"The foregoing statements and answers, and also those made to the company's medical examiner, are true and full, and they are offered as a consideration of the policy contract, which shall not take effect until the first premium shall have been paid, during my life and good health. I have examined and do accept the provisions of the policy applied for.    *    *    *

"I, Nicholas Muhlbach, of Mullen, Neb., hereby specifically agree that the sum of $162.40 paid by me this 17th day of Jan., 1919, to C. A. Coons, agent for the Omaha Life Insurance Company of Omaha, Neb., as the annual premium on $5,000 insurance applied for by me shall be retained by the said Omaha Life Insurance Company as full and complete liquidation of any and all damages by them sustained should I refuse, fail or neg-

lect to present myself within ten days from the date hereof for examination by a reputable physician. Date my policy Jan. 17, '19."

The premium was handed to the "medical examiner" and by the latter to Coons, the soliciting agent, who sent it to defendant. Defendant's letter acknowledging the receipt of the application and the premium is dated January 20, 1919, and contains these statements:

"We acknowledge receipt of your application for $5,000 insurance, with settlement for premium, $162.40, through our Mr. C. A. Coons. Upon receipt of the medical and approval, policy will go forth."

In addition to the written instruments there is proof tending to show that the applicant was in good health when he made his application and paid his first annual premium, and that he was alive and in good health when defendant acknowledged the receipt of the application and the first annual premium.

Is a binding contract for present insurance shown? In the argument on behalf of plaintiff there is emphasis on the language of the application, "Date my policy Jan. 17, '19," and it is insisted that the applicant complied with all conditions essential to a present, binding insurance contract, that the risk was approved and accepted upon the payment of the first annual premium, while the applicant was alive and in good health, and that there was nothing in any of the writings to the effect that the insurance should not go into effect before the issuance of the policy.

The position of plaintiff seems to be untenable. The parties did not enter into a contract on the twenty-payment plan, and defendant promised to return all of the premium, if a policy should not issue. If the parties did not make an insurance contract, there was no necessity for agreeing that it should not go into effect. The applicant applied for a policy instead of a contract of insurance to become effective before the issuance of a policy. The application is introduced thus: "I, Nicholas

Muhlbach, hereby apply to the Omaha Life Insurance Company of Omaha, Nebraska, for a policy on the twenty-pay plan." The first annual premium paid was not the entire consideration for insurance. Statements to the medical examiner were parts of the consideration. The application so declares. Following the answers to questions relating to family history and to other questions material to an insurance risk, the application declares:

"The foregoing statements and answers, and also those made to the company's medical examiner, are true and full, and they are offered as a consideration of the policy contract."

The application itself, therefore, contemplated statements and answers in addition to those found therein. The undisputed evidence shows that the applicant left the office of the examining physician before the completion of the examination and never returned. The application also permitted defendant to retain the premium as liquidated damages, if the applicant failed to present himself for an examination by a physician within 10 days —an obligation which applicant did not perform. He not only contemplated a subsequent physical examination, but he was advised by letter as follows after he had paid his first annual premium:

"Upon receipt of the medical and approval, policy will go forth."

This was notice from defendant that a report of the "medical" examination was essential, that it had not been received, and that the application for insurance had not been approved. · The premium paid was the price of a risk for an entire year on the twenty-payment plan, and there is nothing to indicate that any part of it was intended to cover a temporary risk pending further inquiry and investigation. Both insurer and applicant, in negotiating for life insurance, should contemplate an investigation sufficient to disclose all facts essential to an insurable risk and to reputable underwriting, since this is required by honest business and common sense. If these

tests could be safely used in determining the amounts of annual premiums, policyholders and insurers generally would be alike benefited. Part of the applicant's consideration for life insurance on the twenty-payment plan failed—disclosure of physical conditions and family history. As a result, the risk was not approved and the policy was never issued. A life insurance risk, before the issuance of a policy for which an application has been made, is not assumed until the minds of both applicant and insurer meet on definite terms to that effect.

The application, the payment of the premium, and the letter acknowledging the receipt of the application and the premium do not, however, include all of the transactions or all of the evidence. There was originally a blank form of receipt on the bottom of the application and it was detachable by means of a perforated line. The examining physician testified that he filled the blanks in this receipt, detached it from the application, and gave it to the applicant when the first annual premium was paid. This receipt states that the insurance shall be effective at the date specified, if approved by the medical director. It also recites:

"If the policy as applied for shall not be issued, the amount hereby receipted for shall be returned on surrender of this receipt."

This receipt not only gave notice to the applicant that the premium was accepted on condition of the medical director's subsequent approval of the insurance, but it contained a definite promise to return the entire amount of premium paid, "if the policy as applied for shall not be issued." Having thus agreed in advance to return all the premium paid, if the policy should not be issued, and the policy, without fault of defendant, not having been issued, no consideration whatever remained for insurance of a temporary nature during the time intervening between the date of the application and the approval or rejection of the risk on the twenty-payment plan. There was therefore no agreement or consideration for present bind-

ing insurance.

Plaintiff insists, however that testimony of the examining physician that he gave the applicant the receipt, in connection with all other evidence, does not justify the peremptory instruction in favor of defendant, for the reason that the agent who solicited the insurance testified that the receipt was not given; he being a witness called by defendant and the latter being bound by his testimony. The record shows that the soliciting agent who eventually received the premium for defendant was not present when the applicant handed the premium to defendant's examining physician, that the statement of the soliciting agent in relation to the receipt should be limited to his own acts, and that the testimony of the examining physician that he gave the receipt to the applicant is uncontradicted.

In conducting its life insurance business, defendant followed the practice of requiring an independent investigation into the family history of each applicant. This would have resulted in the information, contrary to the representations in the application, that the father and the mother and a sister of Muhlbach had been insane. With this information at hand, defendant would not have issued the policy for which the applicant applied.

The applicant's direction to date the policy January 17, 1919, in connection with other facts, is not necessarily a controlling factor. The date is a feature to be considered, but it does not always fix the time when a contract becomes effective. Delay in the approval or acceptance of conditions may postpone the meeting of the minds of the parties on the definite terms essential to a contract. This may apply to negotiations for insurance. If defendant, under date of January 17, 1919, had issued a valid policy effective only at a later date, insured, for the premium paid, would not necessarily have been deprived of his right to a full year's insurance. *Cilek v. New York Life Ins. Co.*, 97 Neb. 56. January 17, 1919, is refuted as the date of a contract for present insurance.

Upon an impartial examination of the record from

every standpoint, it seems clear that there is no evidence to sustain a finding that defendant and the applicant entered into any contract of insurance or that the applicant paid any consideration for present insurance of a temporary nature. It follows that there was nothing to submit to the jury, and that there was no error in the peremptory instruction in favor of defendant.

AFFIRMED.