## BEATY v. SOUTHLAND LIFE INS. CO.

### No. 7423.

Court of Civil Appeals of Texas. Austin.

May 14, 1930.

Rehearing Denied May 28, 1930.

M. G. Cox, of Cameron, for appellant.

Seay, Seay, Malone & Lipscomb, of Dallas, and Henderson, Kidd & Henderson, of Cameron, for appellee.

BLAIR, J.

Appellant sued appellee, alleging that on August 4, 1928, appellee, acting by and through its agent G. W. Baker, and within the real or apparent scope of his authority, entered into a binding oral contract to temporarily insure the life of Aubrey Beaty, appellant's husband, for $1,000 on the 20-year payment plan, the temporary insurance to cover the period from August 4, 1928, when Aubrey Beaty was examined by appellee's local medical examiner and found to be in good health and a medium risk, until a formal policy would be issued and delivered, naming appellant as beneficiary; and that Aubrey Beaty ·died on August·6, 1928, before the formal policy was issued, but during the period he was covered by the oral contract for temporary insurance. Appellee answered that Baker was merely a soliciting and collecting agent and had no authority to make for it the contract alleged by appellant. Appellant replied that appellee was estopped to deny the authority of its agent to make the contract for temporary insurance: (a) Because the recitations of the application with respect to the agent's authority were ambiguous and capable of being construed as authorizing the contract for temporary insurance; and (b) because appellee's president before the death of Aubrey Beaty, and on August 6, 1928, by letter accepted and ratified Beaty's application for insurance and obligated appellee to issue the policy.

At the conclusion of the evidence the court instructed a verdict for appellee and rendered judgment accordingly; hence this appeal.

On August 4, 1928, G. W. Baker, appellee's agent with authority only to solicit insurance and take applications therefor and to collect premiums and ·forward same to appellee's home office at Dallas for acceptance, took the application of Aubrey Beaty for a $1,000 policy of life insurance on the 20-year payment plan, naming appellant as beneficiary. Beaty could neither read nor write, so Baker filled in the answers in the application, read the application to Beaty, and at request of Beaty signed Beaty's name to it.

It was written in the application at a place indicated for that purpose that applicant wanted the insurance to be effective from August 4, 1928, and a copy of the application was delivered to Beaty as a receipt when he signed it. On the same day, August 4, 1928, appellee's local medical examiner at Cameron, Tex., examined Beaty and reported that he, was not a "first class risk," but was a "medium risk," because both of his parents "had died of Bright's disease," and further that he was of "good moral habits, but financially very poor and a poor manager." The application and medical report, together with $5.-75, the "net" premium due on the policy, were on the same day, August 4, 1928, mailed by Baker to appellee's home office at Dallas, Tex. Baker took Beaty's note for $17.25 for the remainder of the premium, which was Baker's commission for soliciting the insurance. At 8:30 p..m. Sunday, August 5, 1928, a man stabbed Aubrey Beaty with a knife from which he died at 8:10 p. m. Monday, August 6, 1928. On Monday, August 6, 1928, appellee received the application and on the same day acknowledged receipt of the application by a form letter mailed out of appellee's office. On August 6, 1928, Baker wrote appellee, informing it of the death of Beaty, and August 7, 1928, appellee's local medical examiner also wrote of Beaty's death, both stating that he had applied for insurance. On August 8, 1928, appellee wrote Baker that it had taken no action on Beaty's application, and had issued no policy and instructed him as follows:

"You are, therefore, hereby instructed to return to Mrs. Ida Ella Beaty the settlement secured by you, which is stated to be $5.75 in cash and note for $17.25, due September 1st, and take up and return to the company any receipt you may have given to the applicant. The company's check to the order of Mrs. Ida Ella Beaty is enclosed herewith."

A day or two later Baker tendered to, and Mrs. Beaty refused, the check and note referred to in the letter. Still later Baker, at the request of the company, tendered Mrs. Beaty . $5.75 in cash and the note, which she also refused to accept.

Beaty's application for the insurance contained the following provisions:

"2. The policy or policies issued in consequence thereof shall constitute the entire contract of insurance, and the company shall not be bound in any way by any promise or statement made by or to any agent or other person, unless such promise, statement or information be reduced to writing and submitted to the company and made a part of the contract;

"3. That there shall be no liability hereunder until a policy shall be issued and manually delivered to me and accepted by me while

in good health, and the first premium thereon actually paid during my lifetime; provided, however, that if said premium is paid in full to said company's agent at the time of making this application and if the company at its home office in Dallas, Texas, shall issue a policy on the plan applied for herein then the insurance, (subject to the provisions of the policy applied for) shall be effective from the date of my medical examination."

Appellant contends that the jury should have been permitted to determine whether Baker acted within the real or apparent scope of his authority in offering in behalf of appellee to temporarily insure the life of Aubrey Beaty from August 4, 1928, the date of his medical examination, until a formal policy of insurance was issued by appellee, because the provisions of the application above quoted with respect to the effective date of the insurance and the authority of the agent to make and submit written agreements not contained in the application were ambiguous and capable of being understood by Beaty to mean that if his application was accompanied by the medical examiner's report showing him to be in good health and a good risk and the full amount of the first annual premium due on the policy, the application would be approved and his insurance would be effective from the date of his medical examination We do not sustain the contention.

In the first place, there is no proof of appellant's allegation that Baker orally contracted with Beaty that appellee would issue the policy upon presentation of the application accompanied by the local medical examiner's report showing applicant to be in good health and a good risk and the $5.75 "net" premium due on the policy for the first year. Baker testified that he told Beaty that the insurance applied for would be effective from the date of his medical examination only in the event the policy was actually issued and manually delivered to him as stipulated in the application. Beaty's brother testified that he heard Baker tell deceased the insurance would be effective from the date of his medical examination. No witness testified, nor is there any fact or circumstance in the record which would indicate, that Baker, as agent for appellee, undertook to contract with Beaty that appellee would be compelled to accept the application when accompanied by the local medical examiner's report showing applicant to be in "good health" and a "medium risk" and the $5.75 "net" premium due for the first year, and to issue the policy. Missouri State Life Ins. Co. v. Boles (Tex. Civ. App.) 288 S. W. 271 (writ dismissed).

Nor did the issuance of the binding receipt (the copy of the application delivered to Beaty as a receipt by Baker as agent of appellee) providing that the insurance should be in force from the date of medical examination, provided the applicant was approved and accepted, preclude appellee from rejecting the application, with or without reason, and notwithstanding the medical examination showed applicant to be in good health and a medium risk, and such receipt is not a binding contract for temporary insurance. Brancato v. Nat'l Reserve Life Ins. Co. (C. C. A.) 35 F.(2d) 612.

In the second place, such alleged oral contract, if made, was specifically prohibited by the express terms of the application itself, which provided that "the company shall not be bound in any way by any promise or statement made by or to any agent or other person, unless such promise, statement or information be reduced to writing and submitted to the company and made a part of the contract." Such oral contract was also contrary to the express terms of the application, which provided that "no liability" would arise under the application until the application was accepted and approved by the insurance company. Appellee did not accept and approve Beaty's application for insurance, which under the express terms of the application was necessary to fix appellee's liability for the insurance. The oral contract alleged to have been made by Baker was nothing more than an attempt on the part of the soliciting agent of the insurance company to change or alter the terms or conditions of an application for insurance, which is specifically prohibited by article 5063, Rev. St. 1925, and by the court decisions which hold that a mere soliciting agent has no implied authority to consummate an oral contract of insurance. Missouri Life, etc., v. Boles, supra; 32 C. J. 1066, and cases cited.

Nor do we sustain in this connection the contention of appellant that the above provisions of the application are ambiguous and were capable of being understood by Beaty to mean that if his application was accompanied by the medical examiner's report showing him to be in good health and a good risk and the full amount of the first annual premium due on the policy, his application would be accepted and his insurance would be effective from the date of his medical examination. There is no evidence that deceased was in any way misled with respect to any language of the application. Clause 2 of the application duly informed Beaty that Baker had only limited authority in the premises, which was at least sufficient to put Beaty upon inquiry as to the agent's authority. If he had inquired, he would have found that Baker was a mere soliciting agent with authority to only take applications for insurance, collect premiums, and submit them to appellee for its approval and acceptance. This clause informed him that all promises of the agent must be in writing, submitted to the company, and approved by it before the company would be bound. Clause 3 of the application fully informed applicant that "no

liability" would arise under his application until the application was accepted and approved. These provisions were read to him, and there is no evidence that he was misled or overreached in any way because he could neither read nor write. In fact, the whole record shows that he fully understood that he was simply making application for insurance, which if accepted and approved he would be insured from the date of his medical examination. Unfortunately he met his death before the insurance applied for became effective under the express terms of his application for it.

■■ The following authorities fully sustain our above conclusions that the language of clause 2 of the application showed that the agent had only limited authority and only had power to receive and forward application for insurance; that he could not bind the appellee company by any oral contract for temporary insurance; and that as regards contracts for life insurance the usage is general that life insurance agents do not have power to conclude oral agreements for temporary or other character of insurance, but that they merely take applications and collect premiums and forward same to their companies for approval and acceptance; and for the further proposition that the taking of an application for insurance by a soliciting agent is merely an initial step towards obtaining insurance and in effect an offer on the part of applicant provided it is approved and accepted by the insurance company. Connecticut Mutual Life Ins. Co. v. Rudolph, 45 Tex. 454; Jones v. Great Southern Life Ins. Co. (Tex. Civ. App.) 289 S. W. 450; Olson v. American Central Life Ins. Co., 172 Minn. 511, 216 N. W. 225; Turlington v. Metropolitan Life Ins. Co., 193 N. C. 481, 137 S. E. 422; Newark Fire Ins. Co. v. Russell, 142 Miss. 397, 107 So. 417; Magness v. Great Southern Life Ins. Co. (Tex. Civ. App.) 219 S. W. 280; Ivie v. International Life Ins. Co., 217 Ala. 559, 117 So. 176; Guarantee Fund Life Ass'n v. Barclay (Tex. Civ. App.) 11 S.W.(2d) 231; Graham v. Mutual Life Ins. Co., 176 N. C. 313, 97 S. E. 6; Basinsky v. Nat'l Casualty Co., 122 Wash. 1, 209 P. 1077; Merchants' & Bankers' Fire Underwriters v. Parker (Tex. Civ. App.) 190 S. W. 525; Muhlbach v. Omaha Life Ins. Co., 107 Neb. 206, 185 N. W. 447; Banks v. Clover Leaf Casualty Co., 207 Mo. App. 357, 233 S. W. 78; Nat'l Union Fire Ins. Co. v. School District, 122 Ark. 179, 182 S. W. 547, L. R. A. 1916D, 238; Rhodus v. Kansas City Life Ins. Co., 156 Mo. App. 281, 137 S. W. 907; Northwestern Mutual Life Ins. Co. v. Neafus, 145 Ky. 563, 140 S. W. 1026, 36 L. R. A. (N. S.) 1211; Kennedy v. Mutual Benefit Life Ins. Co. (D. C.) 205 F. 677; Allen v. Massachusetts Mutual Acc. Ass'n, 167 Mass. 18, 44 N. E. 1053; Francis v. Mutual Life Ins. Co. of New York, 55 Or. 280, 106 P. 323; Steinle v. New York Life Ins. Co. (C. C. A.) 81 F. 489; New York Life Ins. Co. v. Levy's Adm'r, 122 Ky. 457, 92 S. W. 325, 5 L. R. A. (N. S.) 739; Great Southern Life Ins. Co. v. Dolan (Tex. Com. App.) 262 S. W. 475; Cooley's Briefs on the Law of Insurance (2d Ed.) 1927, vol. 1, pp. 469, 470, 520, and 583.

■ Appellant further contends that the sending of a letter, dated August 6, 1928, purporting to be signed by Harry L. Seay, president of appellee, constituted an acceptance of Beaty's application for insurance, or at least constituted some species of estoppel which bound appellee. The letter reads as follows:

"Mr. Aubrey A. Beaty, R. F. D. No. 3,
"Cameron, Texas.

"I want to express my personal appreciation of your application for life insurance in this Company. That you have made no mistake in the selection of a company in which to insure is evident from the steady and persistent growth that has marked the nineteen years existence of the Southland. The remarkable progress of the Southland Life Insurance Company did not just happen, but is the result of a very definite conviction that no life insurance company could endure or even succeed unless it rendered a real service to its policyholders. It is our hope that in the following years we may have the opportunity to render to you the same service on which our present success rests.

"May I point out one incontrovertible fact that applies to any life insurance policy? It is only by carrying that policy to its contemplated maturity that you can secure full benefit of the premiums paid. Be sure that you have chosen the plan and amount that fits your needs and circumstances and then let nothing tempt you to lapse or surrender your insurance. If it ever becomes inconvenient for you to pay your premiums, or if you conclude that the plan you selected is no longer appropriate, I will take it as a favor if you will write me personally. I may be able to be of assistance to you."

It is not entirely clear from the record whether this letter was actually sent to Mr. Beaty by appellee, other than from the testimony that it was the custom of appellee to send such circular letter to each applicant for insurance. But assuming that it was sent to Beaty, we think it merely an acknowledgment of receipt of his application for insurance, and contains some advice to persons wishing to procure or who already held insurance. The undisputed evidence shows that the employees of appellee customarily sent such letters to all applicants for insurance upon receipt of their application, whether the application had been approved or not; and that it was not intended as an approval of the application. The president of appellee did not pass upon or approve applications, but such power was delegated to a "Risks Committee," and the undisputed evidence shows that

Beaty's application was never referred to the risks committee, nor approved or accepted by it. Beaty never saw the letter and certainly could not have been misled by it so as to estop appellee from showing that it was a mere acknowledgment of receipt of his application for insurance. The following authorities hold that letters similar and of even stronger language than the one here considered did not constitute acceptance of applications for insurance: Magness v. Great Southern Life Ins. Co. (Tex. Civ. App.) 219 S. W. 280; Guarantee Fund Life Ass'n v. Barclay (Tex. Civ. App.) 11 S.W.(2d) 231; Muhlbach v. Omaha Life Ins. Co., 107 Neb. 206, 185 N. W. 447.

■ Another contention of appellant is that appellee is also bound by some species of estoppel to deny the acceptance of Beaty's application of insurance, because Mrs. Beaty paid the $5.75 "net" premium on the policy to Baker, who receipted her for it in September, 1928. The whole of this transaction was that Beaty did not have the cash to pay the $5.75 "net" premium to be sent along with his application, and Baker personally loaned him the money, and appellant simply repaid this loan subsequent to Beaty's death, and long after appellee had tendered her the $5.75 received by it with the application. Such was a personal transaction between appellant and Baker and in which appellee had no concern or interest. Bloodworth v. Alcorn (Mo. App.) 246 S. W. 995; Taylor v. Lowell, 3 Mass. 331, 3 Am. Dec. 141; Graham v. Remmel, 86 Ark. 535, 112 S. W. 141; O'Reilly v. Miller, 148 Wash. 277, 268 P. 869.

The other propositions presented by appellant are without merit, and the judgment of the trial court is affirmed.

Affirmed.