Barbara DEBENPORT, Next Friend,
Appellants,

v.

GREAT COMMONWEALTH LIFE
INSURANCE COMPANY,
Appellee.

No. 15497.

Court of Civil Appeals of Texas.

Dallas.

May 8, 1959.

Matthews, Aultman & Riley, Fort Worth, for appellants.

Turner, White, Atwood, McLane & Francis, B. Thomas McElroy and L. Ray Pearce, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal by Barbara Debenport and her minor child, surviving widow and son respectively of Bobby Debenport, from a summary judgment in favor of appellee Great Commonwealth Life Insurance Company, defendant in the trial court.

In their petition appellants allege that on or about November 26, 1956 Bobby Debenport, a pilot in the United States Air Force, entered into an agreement for the purchase by Debenport of a contract and policy of life insurance in the amount of $13,000, with double indemnity in event of accidental death; that on November 26, 1956 Debenport made an initial premium payment which appellants believe to be in an amount of $84.03, and later an additional payment in an amount of $26.21, the latter payment being for aviation insurance; for which payments appellee through its agent and salesman issued "Binding Receipts" Nos. A–31473 and A–31475 in the amounts respectively of $84.03 and $26.21, the first receipt being dated November 26, 1956 and the second receipt December 4, 1956.

Bobby Debenport was killed in an airplane crash in Utah on January 3, 1957.

Appellants further alleged on information and belief that the policy was issued by appellee; that they have been unable to locate it; but that if said policy was not issued appellee is nevertheless bound by the insurance contract because (1) appellee's sales agent represented to Bobby Debenport at the time the receipts were issued that the policy was then and there in effect and that

his life was immediately insured; (2) appellee was negligent in having failed to issue the policy prior to the date of Debenport's death; (3) the receipts themselves by their terms bound appellee. Appellants do not plead fraud.

The Great Commonwealth Life Insurance Company answered, denying the issuance of any policy of life insurance upon the life of Bobby Debenport; denying that any premiums were paid; denying that it even knew prior to Debenport's death that the receipts had been handed him; denying that it issued, or under its rules could have issued the aviation policy claimed by appellants, for which no application was ever received.

Appellee's motion for summary judgment is supported by affidavits, and exhibits, and the depositions of appellant Mrs. Barbara Debenport and Mrs. K. K. Mitchell, a vice-president of appellee Insurance Company.

The gist of the evidence adduced by appellee is that no policy of insurance was ever issued to Bobby Debenport; that his application was not received by the home office until after the death of Bobby Debenport; that no application was ever received for aviation insurance; that the application of November 26, 1956 had been held up at the Houston office of appellee's District Manager; and it was not accompanied by an initial premium payment, or other supporting documents, including a doctor's statement, as required by the Company. The evidence, including two letters from officers at Foster Air Force Base, indicates that Debenport was unable to raise the money to make the cash quarterly payment of $84.03 named in one receipt, so planned to tender one month's payment of $26.21 to see if appellee would accept his application with only the latter initial payment.

Practically all of the facts asserted by appellee are uncontroverted. Mrs. Barbara Debenport in her deposition says that she did not talk to any representative of appellee Company prior to her husband's death. In a controverting affidavit she says

that "defendant company did issue and delivered a binding receipt and application to plaintiff's husband" and "That as a result of a premium paid * * * the defendant company became liable as a matter of law to issue its policy and if it did not issue same, a policy should have been issued under the law and under the facts * * *. That a witness will be offered to show premium was actually paid." Her controverting affidavit does not give the name nor is it supported by a statement of the witness she says will show the premium was actually paid. Indeed, her controverting affidavit, which consists for the most part of legal conclusions, is not supported by any attached affidavits, exhibits, or depositions except her own deposition, in which she frankly states that the main reason she can think of for claiming that the premiums were paid is that she has the receipts.

■ Appellants' original brief was defective, in form in that it did not contain a statement or argument presenting the points upon which the appeal is predicated as provided by Rule 418, Texas Rules of Civil Procedure. With our permission appellants filed an amended brief in which four points are presented and argued. Appellee has filed a motion to strike appellants' amended or supplemental brief, because it contains points and citations of authorities not included in the original brief. It is expressly provided in Rule 431, T.R.C.P. that briefs may be amended. Appellee's motion to strike appellants' amended brief is overruled.

In their first, second, and fourth points appellants say that (1) the record shows numerous questions of fact which should be presented to a jury; (2) the two receipts together with the written application for insurance signed by Bobby Debenport constitute a binding contract for insurance; and (4) the receipts themselves constitute a prima facie contract for temporary insurance.

Appellants in their statement under their first point do not say what issues of fact are presented by the record. However, from a reading of their brief as a whole we gather that the principal fact question which they say must be determined is whether the two premium installments of $84.03 and $26.21 were actually paid to appellee.

In our opinion such fact issue, if it is a fact issue, is immaterial to the outcome of this case, for even if it were presumed that the payments were made and the receipts regularly issued, other and controlling facts are undisputed and are found in the written application signed by Bobby Debenport and in the receipts themselves.

The signed application for insurance contains these provisions: "It is agreed that: (1) The Company shall incur no liability under this application until it has been received and approved, a policy has been issued and delivered, and the full first premium specified in the policy has been actually paid to and accepted by the Company * * * However if the full first premium specified in the application on the policy is paid on the date of this application and the receipt bearing the same serial number as this application is issued to the applicant, then the liability of the Company shall be as stated in the receipt. * * * (2) Only the President, a vice-president, Secretary or an Assistant Secretary of the Company can make, modify, or discharge contracts * * * and then only in writing. No statement, representation or promise made by any other person shall be binding on the Company." The above application, the only application shown in the record, makes no mention of aviation insurance.

The two receipts are alike except as to amounts and dates. Both of them contain these provisions: "The insurance * * * for which application is made shall be effective on date of this receipt * * * *if in the opinion of the authorized Officers*

*of the Company at its Home Office in Dallas, Texas, the Proposed Insured is insurable and acceptable for insurance under its rules and practices* on the plan of insurance, for the amount of insurance, and at the premium rate set forth in the application * * *. However if the Proposed Insured dies prior to the Company's actual issuance and delivery of the policy applied for, the total liability of the Company under this receipt and other insurance in force shall not exceed $50,000.00. If the Company declines to issue a policy * * * the Company shall incur no liability hereunder except to return by its check the above payment upon surrender of this receipt. * * If you do not receive your policy or hear from the Company within 60 days, write us". (Emphasis ours.)

█ It is important to note that the application signed by Bobby Debenport provides expressly that insurance coverage is conditioned on the acceptance of the application by the Company; and the receipts provide that coverage shall go into effect on the date of the receipts *if in the opinion of the Company's Officers at its home office the proposed insured is acceptable for insurance under its rules and practices.* There is no evidence that the application was ever accepted by the Company; and there is no evidence that in the opinion of the Company's Officers Bobby Debenport was acceptable for insurance by the Company. In fact, there is evidence in the record, and it is uncontradicted and uncontroverted, that the officers of the Company had no actual knowledge of the application until after the death of Bobby Debenport. Under such circumstances the insurance coverage never went into effect.

The applicable rule is well stated in 29 Amer.Jur. 160: "Usually, when an insurance agent procures an application for life * * * insurance, he accepts payment of the first premium from the applicant. Quite commonly, there is a provision in the receipt given to the applicant, * * * to the effect that the insurance shall be considered as

in force from the date of the receipt or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Such receipts are known in the insurance business as 'conditional receipts,' or, less frequently, as 'conditional binding receipts.' It is uniformly held that such an instrument is absolutely ineffectual in providing protection to the applicant until the application is approved or accepted."

In an annotation in 107 A.L.R. 195 it is said: "The later cases recognize that where the application, or the binding receipt issued, provides that the insurance shall go into effect as of the date of the receipt, application, or examination, subject to the approval of the application or its acceptance by the insurer, no protection is afforded the applicant until the application is approved or accepted."

Texas decisions are in conformity with the rules as above stated. Glens Falls Indemnity Co. v. Roberson, Tex.Civ.App., 282 S.W.2d 438; Southwestern Life Ins. Co. v. Evans, Tex.Civ.App., 262 S.W.2d 512; Beaty v. Southland Life Ins. Co., Tex.Civ. App., 28 S.W.2d 895; Connecticut Life Co. v. Rudolph, 45 Tex. 454, 461.

Appellants rely on the holding in Colorado Life Insurance Co. v. Teague, Tex.Civ. App., 117 S.W.2d 849. We think that case may easily be distinguished from the case now before us. In the Teague case the receipt provided that the coverage should take effect on the date of the payment of the money if the applicant was 45 years of age or under and was insurable as a standard risk on the date of the application to which the receipt was attached. In the case now before us the receipts provide that coverage should take effect on the date of the receipts *if in the opinion of the authorized officers of the home office in Dallas, Texas* the proposed insured is insurable and *acceptable* for insurance. In the Teague case the insurance went into effect immediately ipso facto if the applicant within himself measured up to the named standards

—no approval by officers at the home office was required. In the instant case coverage is postponed pending a decision by the authorized officers at the home office to the effect that in their opinion the proposed insured is acceptable for insurance. The language used seems to us to be unambiguous and can mean only that coverage must wait for approval by the officers at the home office.

The significance of this difference in the language and meaning of the receipts is recognized in the Teague case, for at page 855 of its opinion the court says: "We are not dealing with what is generally known as a 'conditional receipt' or what is less frequently called a 'conditional binding receipt.' Commonly there is found in this type of receipt, and in some instances duplicated in the application, a provision to the effect that the insurance shall be considered as in force from the date of the receipt, or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Of course, such an instrument is ineffectual to provide protection to the applicant until the application is approved or rejected."

There is no merit in appellants' contention that appellee Company was negligent because of delay in passing upon the application for insurance. The receipts themselves invite the proposed insured to write the Company if he has not received a policy, or heard from the Company within 60 days. Only 38 days and 30 days respectively had transpired from the time the receipts were issued until Debenport's accidental death.

But even if it should be said that there is a fact question as to whether such length of time constituted delay, the presence of such fact question would not be of any help to appellants' cause. A life insurance company may accept or reject those who apply for insurance as it sees fit. In the absence of any duty to contract, there can be no liability for negligence of a party because of delay in accepting an offer to contract. Amicable Life Ins. Co. v. Neale, Tex.Civ.App., 226 S.W.2d 479, 481; American Life Ins. Co. v. Nabors, 124 Tex. 221, 76 S.W.2d 497; Great Southern Life Ins. Co. v. Dolan, Tex.Com.App., 262 S.W. 475.

We find no evidence that appellee's soliciting agent made the unqualified oral representation to Bobby Debenport that the insurance would take effect at the time of the issuance of the receipts. But even if he did make such a representation, he had no authority to do so. This is shown by the express language of the application, the testimony of the Company officials, and the Statutes of the State of Texas. Sec. 21.04, Insurance Code, Vol. 14, V.A.C.S. Moreover there is no evidence that Debenport did not have an opportunity to read the application and receipts, or that he did not in fact read and understand them.

Appellants' first, second and fourth points are overruled.

Appellants' third point is that the court erred in admitting into evidence at the hearing on appellee's motion for summary judgment the voluminous exhibits, letters, forms, etc. contained in the motion, for the reason that the exhibits and items are self-serving and hearsay.

Appellee's motion for summary judgment was sworn to on the personal knowledge of Mrs. K. K. Mitchell, First Vice-President of appellee Company. The facts alleged in the motion are for the most part uncontroverted. Certainly there is no dispute between the parties as to the contents of the application for insurance signed by Bobby Debenport and the receipts which were issued to him. The evidence is uncontradicted and uncontroverted that at the time of Bobby Debenport's death the Company had neither accepted Bobby Debenport's application nor had its officers accepted Bobby Debenport for insurance. Appellee's motion with its attached exhibits and accompanying depositions is sufficient

to sustain the trial court's summary judgment. Appellants' third point is overruled.

The judgment of the trial court is affirmed.