UNITED FOUNDERS LIFE INSURANCE COMPANY, Petitioner,

v.

Glynda Bruce CAREY et vir, Respondents.

No. A–8519.

Supreme Court of Texas.

Nov. 28, 1962.

Rehearing Denied Jan. 16, 1963.

Upton, Upton, Baker & Griffis, San Angelo, for United Founders Life Ins. Co.

Snodgrass, Smith & Rose, San Angelo, for Carey and husband.

HAMILTON, Justice.

This is a suit upon an alleged contract of life insurance, based upon an application to United Founders Life Insurance Company for life insurance and a "binding receipt" issued by such company, as distinguished from a suit upon a life insurance policy. The applicant, Billy Gene Bruce, died before any insurance policy was issued. Trial was to a jury and on the jury's verdict judgment was entered for respondent Glynda Bruce Carey, the surviving but remarried wife of the deceased applicant. The Court of Civil Appeals has affirmed that judgment. 347 S.W.2d 295.

On July 27, 1958, the applicant, Billy Gene Bruce, who was then an insurance salesman for the petitioner insurance company, applied to it in writing for life insurance on himself as a standard risk for $25,000, naming his wife, the respondent here, as his beneficiary. This application provided that the company would incur no liability until the application had been received, approved, and a policy issued and delivered while applicant was in good health, but had the further proviso, "However, if the full first premium specified in the application on the policy applied for is paid on the date of this application and receipt bearing the same serial number as this application is issued to the applicant, then the liability of the company shall be as stated in the receipt." The premium mentioned was paid by the applicant and petitioner issued a receipt therefor containing this provision:

"* * * The insurance under the policy for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if required) whichever is the later date, if in the opinion of the authorized Officers of the Company at its Home Office in Oklahoma City, Oklahoma, the Proposed Insured is insurable and acceptable for insurance under its rules and practices on the plan of insurance, for the amount of insurance and at the premium rate set in the application, exclusive of any amendments in the space for 'Home Office Additions or Correction.' * *"

The trial court submitted the following issue to the jury, which answered it as indicated:

"Do you find from a preponderance of the evidence that prior to Billy Gene Bruce's death in the opinion of the proper official of United Founders Life Insurance Company Billy Gene Bruce was insurable and acceptable for insurance under its rules and practices on the plan of insurance, for the amount of insurance, and at the premium rate set in his application for life insurance?

"Answer yes or no.

"Answer: Yes."

█ The petitioner complains that there was no evidence to support the answer given by the jury to this issue. On this point we reverse the judgments of the Court of Civil Appeals and the trial court, but in the interest of justice we remand the cause for a new trial. Rule 505, Texas Rules of Civil Procedure.

In May or June of 1958 Mr. Bruce, the applicant, began employment as an agent of petitioner insurance company for the purpose of selling life insurance. His immediate supervisor, the general agent in San Angelo for petitioner company, was Mr. Gerald Stewart. As such agent and salesman Mr. Bruce attended the company school in Oklahoma City shortly after the beginning of his employment to familiarize himself with life insurance and the sale of life insurance, and with the rules and practices of his own company. These practices, with which Mr. Bruce became familiar at this school and through his own selling efforts, included the necessity and requirement by petitioner for "reinsurance" in every case where application was made to petitioner for insurance in excess of $5,000. By such procedure when an application for insurance in excess of $5,000 was received by petitioner, the company secured through its agent a medical examiner's report and a credit or inspection report. Petitioner company submitted these items, together with the application, and its own application for reinsurance, to its reinsurer, Republic National Life Insurance Company, for the latter's underwriting action, its consideration, and for either approval or refusal of the application for reinsurance. In every application for more than $5,000 it was the practice of petitioner to always rely on its reinsurer, Republic National Life Insurance Company, to pass upon the insurability and acceptability of the applicant before any determination was made by petitioner. In forming its opinion petitioner invariably followed the recommendation of Republic on such matters.

As was the usual procedure, petitioner submitted the application, the credit report and the medical examiner's report of Bruce to Republic on September 5, 1958. Bruce's application and medical report were never submitted to petitioner's medical director, because the coverage requested exceeded $5,000 and the application was considered as a reinsurance matter.

On September 8, 1958, Republic wired petitioner's underwriting department that the application of Mr. Bruce was approved as a standard risk subject to "statement of any doctor consulted within past five years regarding nervous disorder." An interoffice memorandum of September 9, 1958, advised petitioner's general agent, Gerald Stewart, that regarding the insured "it will be necessary that we have a statement from any doctor you have consulted during the past five years regarding nervous disorder before we can complete the processing of this application for life insurance." A report in response to this memorandum was made by Dr. Valton Sessums on September 29, 1958, and was received by petitioner on October 1, 1958. This report, among other facts, revealed that the doctor had viewed electrocardiograms of Bruce which showed his heart condition to be normal.

On October 6, 1958, petitioner's chief underwriter advised its general agent that the report from Dr. Sessums had been received and forwarded to its reinsurance company on October 1, and that she had on October 6 received a wire from the reinsurer requesting a review of the electrocardiograms made by Dr. Sessums, and that a loan of them from Dr. Sessums had been requested.

On October 16 petitioner's underwriter by interoffice memorandum to Bruce requested a follow-up on the last request made to Dr. Sessums. On October 18 Bruce was critically injured in an automobile accident, and died from such injuries on October 23.

On October 21 Dr. Sessums wrote to petitioner, advising it that the electrocardiograms were not made in his office, but were made by two physicians in Odessa, Texas, and a physician from Ballinger, Texas. This letter was received by petitioner on the date that Bruce died.

By letter dated November 18, 1958, from William D. Curlee, assistant secretary and treasurer of United Founders Life Insurance Company, to respondent, liability was denied, the letter saying in part:

"The policy applied for was not issued and never became effective because, upon medical grounds, it was determined that Mr. Bruce was not insurable and acceptable under the company's rules and practices on the plan of insurance for the amount and at the premium rate set in the application."

On the question of whether or not an opinion had been formed as to the insurability or acceptability of Billy Gene Bruce at the time of his death, we have the testimony of Mrs. Helen Smith, chief underwriter and only officer authorized to pass upon the question of insurability and acceptability of an applicant, and also of Mr. Brunswick, the secretary of the reinsurance department of Republic National Life Insurance Company, the officer who passed on reinsurance matters for that company. The testimony of Mrs. Helen Smith in regard to that matter is as follows:

"Q. Is the only reason you are denying this claim is because you never did accept it?

"A. This application on Billy Gene Bruce had never been completed. It had never been accepted or rejected. It was still in a pending status. We were still trying to secure the information.

"Q. Did you pursue any further the the attempts to secure the EKGS [electrocardiograms] after Mr. Bruce was killed?

"A. Not after I knew Mr. Bruce was deceased.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Is that your answer, you never did have any opinion at all, never formulated any opinion at all?

"A. I hadn't completed making an opinion. We were still trying to secure information.

"Q. You actually stopped, though, when he died?

"A. Yes, I did."

Mr. Brunswick's testimony is as follows:

"A. \* \* \* We were waiting, we felt that in a review of the previous history, what we did know about the case, in order to make a fair appraisal we would need the electrocardiograms to be reviewed by our physicians, and at that point we were not sure how we would rate that case.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Now then assuming that the E K G's would have come back—

"A. Uh, huh.

"Q. —and your medical staff would have reviewed them, and they would have found it to be within normal limits, then that would have meant a standard risk?

"A. It is possible.

"Q. It is probable, isn't it?

"A. It is possible; it is probable.

\*　　\*　　\*　　\*　　\*　　\*

"Q. My question is, has Republic National made any attempt themselves, other than the one request to United Founders to obtain the E K G's subsequent to Mr. Bruce's death?

"A. No."

We think this evidence shows not only that the proper officer of the petitioner company had not formed any opinion as to the insurability and acceptability of Billy Gene Bruce before his death, but that up until that time they were diligently investigating his medical history in a good faith attempt to reach an opinion. We likewise are of the opinion that there is no evidence that any opinion was formed after the death of Billy Gene Bruce that he was insurable and acceptable. In fact, the letter quoted from above affirmatively states that it had been determined that he was not acceptable and insurable. But the letter does not foreclose the matter if the receipt delivered to Bruce was intended to provide him with temporary insurance from the date of his medical examination. If it was so intended, the opinion that he was not insurable and acceptable must have been a good faith opinion. Colorado Life Co. v. Teague, Tex.Civ.App., 117 S.W.2d 849, writ dismissed. The crucial question, then, is whether the parties intended that the receipt should provide temporary insurance from the date of the medical examination until final action of petitioner in issuing or refusing to issue a policy of insurance.

Whether a receipt of the general nature of that issued to Bruce affords temporary insurance has been the subject of considerable controversy and contrariety of opinion. See annotations contained in 2 A.L.R. 2d 943, 107 A.L.R. 195, and 81 A.L.R. 332. In the courts of a majority of the states the wording of the particular receipt in controversy controls the conclusion reached. The author of the annotation in 2 A.L.R.2d 943 classifies variously worded receipts in four classes. The author of an article in 44 Yale Law Journal 1223 divides the various receipts into two more general and comprehensive classes, the first class being those which provide for insurance to be in force from the date of medical examination "providing the application be approved and accepted as applied for," and the second class being those which provide that the insurance shall be effective as of the date of the medical examination "if the company shall be satisfied that on that date the applicant was an insurable risk and the applicant was otherwise acceptable under the company's regulations for the amount and plan of the policy applied for." The Court of Civil Appeals stated that the receipt in this case "clearly falls within the first classification." If that conclusion be correct, the receipt did not provide Bruce with temporary insurance because approval and acceptance of his application was a condition precedent to effectiveness of the contract. Beaty v. Southland Life Ins. Co., Tex.Civ.App., 28 S.W.2d 895, writ dismissed. Moreover, such a contract is not violative of the public policy of this State. Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660. However, we do not agree with the Court of Civil Appeals' conclusion.

The receipt before us does not necessarily fall into either of the two classes outlined by the author of the Yale Law Journal article. It does not by its express terms fall into the first classification because it does not make approval of the application or issuance of a policy a condition precedent to effectiveness of the insurance on the date of completion of the medical examination. It does not by its express terms fall into the second classification because it does not state that the insurance shall be effective on completion of the medical examination if in the opinion of the proper officer the applicant was insurable and acceptable *on that date*. However, a careful analysis of the receipt convinces us that it was the intention of the parties to provide Bruce with temporary insurance from the date of completion of his medical examination if in the opinion of the proper officer he was insurable and acceptable, as provided in the receipt, *on that date*.

The receipt is obviously ambiguous, and the rule is well settled that ambiguities in insurance contracts are to be construed against the insurer. Trahan v. Southland Life Ins. Co., 155 Tex. 548, 289 S.W.2d

753; Providence Washington Ins. Co. **v.** Proffitt, 150 Tex. 207, 239 S.W.2d 379.

One thing we may say with certainty is that the receipt is intended to provide temporary insurance for *some* period of time. That conclusion necessarily follows from the express provision of the receipt that the insurance is to be effective upon completion of the medical examination *if in the opinion of the authorized officers the applicant is insurable and acceptable* rather than *upon acceptance of the application or upon issuance or delivery of a policy.* The opinion must be formed before the application is approved and a policy issued. There is no way of knowing how long in advance of approval of the application or issuance of a policy the requisite opinion will be formed, whether thirty minutes or three months, but in no event is the applicant to be without insurance until the application is accepted and the policy is issued. Petitioner seems to agree, for if it were otherwise liability could have been defeated by rejecting the application because of the applicant's death.

■ Assuming, then, that the receipt does provide temporary insurance for some period of time, we are confronted with the question of when it becomes effective. It is on this question that the receipt is particularly ambiguous. It provides that the insurance is to be effective on the date of the "receipt or the date of *completion of medical examination* (if required) whichever is the later date." What is meant by *completion of medical examination?* Does it mean completion of the medical examination by the doctor to whom the applicant is referred? Or does it mean completion of that examination and any further *investigation* the insurer decides to make of an applicant's medical history? Resolving the doubt against petitioner, we think it means the former. Provision that the temporary insurance is to become effective if in the opinion of the authorized officers the applicant "*is*" insurable and acceptable would indicate that the temporary insurance is not to become effective until those officers have

completed such investigation of the applicant's medical history as they deem necessary to the formation of a good faith opinion of insurability and acceptability. But the receipt does not speak of *investigation*; it speaks only of *examination.* A medical *examination* imports a *physical examination* as distinguished from a medical history *investigation.* Moreover, the receipt fixes the effective date of the temporary insurance as the date of completion of medical examination *if required.* We think the meaning of the words "if required" in the context in which they are used is "if required *of the applicant.*" This strengthens the view that the words "medical examination" refer to a physical examination.

There is yet another reason for our construction. The formation of an opinion is purely a subjective process. No one but the officer to whom the decision is entrusted can know when an opinion is reached. It is unreasonable to suppose that it is intended, once an opinion of insurability and acceptability is announced, that the date of the effectiveness of the insurance should be so uncertain. Surely it is intended to fix a definite date, ascertainable by the applicant as well as the insurer, as the date for effectiveness of the insurance.

■ If doubt remains of a proper construction of the language of the receipt, it is resolved by petitioner's own construction thereof. Instead of denying liability on the ground that Mr. Bruce had died before its investigation was complete and therefore before the temporary insurance could become effective, it denied liability, according to its own letter, "because, upon medical grounds, it was determined that Mr. Bruce was not insurable and acceptable." The letter shows that petitioner interpreted the receipt to require it to proceed to the formation of an opinion of Bruce's insurability and acceptability even though it knew Bruce was dead. That belief is inconsonant with the idea that the *temporary* insurance would not become effective until its investigation of Bruce's medical history was complete.

There is no stronger rule for construing a contract of doubtful meaning than that which gives effect to the parties' own interpretation. Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504; James Stewart & Co. v. Law, 149 Tex. 392, 233 S.W.2d 558, 22 A.L.R.2d 639.

■ We thus conclude that the receipt issued to Bruce did provide for temporary insurance and that the insurance was to be effective on the date of completion of his physical examination if in the opinion of the authorized officers of petitioner he was on that date insurable and acceptable according to the terms of the receipt. We have stated that the formation of an opinion by the proper officers of petitioner of Bruce's insurability and acceptability was a condition precedent to the existence of temporary insurance. They could not defeat his right to temporary insurance by arbitrarily refusing to proceed to the formation of an opinion after his death. We have also stated that an opinion that he was not insurable and acceptable could not be reached arbitrarily because of his death but that it must have been reached in good faith. Petitioner was certainly entitled to make any reasonable investigation as a basis for reaching a good faith opinion. The testimony set out above indicates that petitioner was in the course of making such an investigation when Bruce died, but that it promptly discontinued its investigation and thereafter wrote that it had been determined, on medical grounds, that Bruce was not insurable and acceptable. Inasmuch as the case is to be remanded for retrial, it may be well to indicate our views of the issues to be tried if supported by present or amended pleadings.

■ The burden is on respondents to prove that the temporary insurance provided by the receipt was in force when Bruce died. They must thus prove that in the opinion of the proper officers of petitioner Bruce was insurable and acceptable on the date of completion of his medical examination. They are confronted with the letter from petitioner stating that it had determined that Bruce was not insurable and acceptable. If respondents are to prevail they must obtain a fact finding that the determination was not made in good faith. In addition, they must obtain a fact finding from a preponderance of the evidence that a reasonably prudent and careful authorized officer of petitioner company, acting in good faith, would, on the evidence available, find that Bruce was on the date of the completion of his medical examination insurable and acceptable for insurance under petitioner's rules and practices on the plan of insurance, for the amount of insurance and at the premium rate set in his application for life insurance. An answer to this issue should be required only if it is found that the actual determination made by petitioner was not made in good faith. If this issue is raised and reached on retrial it will likely be determined from evidence of the actual condition of Bruce's health on the date of his medical examination.

Petitioner asserts that the evidence raised an issue of fraud practiced on it by Bruce. In view of our remand of the cause that issue may also be tried on retrial if raised by the evidence.

■ We agree with the Court of Civil Appeals' holding that respondents are not entitled to recover attorney fees. We approve the holding made by the court on the same question in Colorado Life Co. v. Teague, Tex.Civ.App., 117 S.W.2d 849, writ dismissed.

The judgments of the Court of Civil Appeals and the trial court are reversed and the cause is remanded to the trial court.

GRIFFIN and NORVELL, JJ., dissenting.

NORVELL, Justice (dissenting).

While the form of receipt involved in this case may be undesirable from a number of standpoints and its use in the insurance field may be against the "public interest," nev-

ertheless, as no policy was issued, the receipt is the contract upon which the respondents must recover if they are to recover at all. The Court reaches the conclusion that this cause should be remanded by construing the provisions of the receipt in a way to bring about results that I cannot justify from the wording of the contract. I am in general agreement with the construction placed upon the provisions of a similarly worded receipt by the Dallas Court of Civil Appeals in Debenport v. Great Commonwealth Life Insurance Company, Tex. Civ.App., 324 S.W.2d 566, no wr. hist. I would follow the Debenport case and render judgment here for the insurance company. Accordingly, I respectfully dissent from the Court's order remanding the cause.

GRIFFIN, J., joins in this opinion.