The NATIONAL LIFE & ACCIDENT INSURANCE COMPANY, Appellant,

v.

Mrs. Alvin BLAGG, Appellee.

No. 410.

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 15, 1968.

Rehearing Denied Sept. 12, 1968.

Guittard, Henderson, Jones & Lewis, O. F. Jones, Victoria, for appellant.

Cullen, Mallette, Maddin, Edwards & Williams, Donald Edwards, Harry F. Maddin, Victoria, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment in the amount of $10,000.00 rendered after jury trial in favor of Mrs. Alvin Blagg, appellee here and plaintiff below, against The National Life and Accident Insurance Company, appellant here and defendant below, hereafter sometimes referred to as "National".

Mrs. Blagg sued National to recover $10,000.00 based upon a life insurance conditional receipt, dated July 6, 1965, issued by National to Mr. Alvin Blagg, then the husband of Mrs. Blagg, which reads as follows:

THIS CONDITIONAL RECEIPT IS NOT VALID IF ALTERED, IF SERIAL NUMBER, AMOUNT OR DATE DIFFER FROM THOSE IN APPLICATION, OR IF ANY CHECK OR DRAFT TENDERED AS DEPOSIT IS NOT HONORED ON PRESENTATION FOR PAYMENT.

RECEIVED OF .......ALVIN BLAGG....... on life of .......SAME....... a deposit of $8.50.... on account of first premium for proposed insurance of $1000.00 as below is this day made to The National Life and Accident Insurance Company. Said deposit is received by the Company subject to the following conditions:

(1) If said deposit is at least equal to premium for one full month (such premium being computed on pro rata basis if premium mode other than monthly), insurance under terms of policy applied for shall take effect as of date of said deposit or date of medical examination (if required), whichever shall be the later, provided that on that date Proposed Insured, in the opinion of the Company's authorized officers in Nashville, Tennessee, was insurable and acceptable under the Company's rules and practices for the Amount, Premium and Rating Class applied for.

(2) Under no circumstances or conditions other than those set forth in (1) above shall receipt of said deposit be deemed to place any insurance in force at any time.

(3) If said deposit is less than first premium under policy, any insurance placed in force hereunder shall terminate 31 days after end of a period which commences with effective date of insurance and bears same proportion to a year that said deposit bears to total premium payable under policy in a year, provided, however, that if, prior to such termination the remainder of said first premium shall be paid, such insurance shall not so terminate but shall be deemed to have been placed in force for same period as though initial deposit had been for entire amount of said first premium.

(4) If Company declines to issue any insurance, or if policy is issued other than as applied for and Applicant declines to accept it, deposit received hereunder will be returned.

Date ......7-6-65...... ................ B.R. ........ Agent

Form 2001 Rev. 6-54 .... District ........ Victoria

N.º 191347

SEE NOTICE ON REVERSE SIDE

Alvin Blagg died on August 14, 1965, at which time National had not issued a policy of life insurance to him. National denied liability to Mrs. Blagg, the beneficiary, and this suit resulted.

The trial court submitted five special issues to the jury. Only issues 1 and 3 were answered, issues, 2, 4 and 5 being conditionally submitted.

The issues and the jury answers are as follows:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the Defendant insurance company's authorized officers ever formed an opinion that Alvin Blagg was insurable and acceptable under the company's rules and practices for the amount, premium and rating class of insurance applied for upon the date of his physical examination?

Answer: 'They did form an opinion' or 'They did not form an opinion'.

We, the Jury, answer: They did form an opinion

If you have answered the foregoing Special Issue No. 1 'They did not form an opinion', then and in that event only, answer the following:

### SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that a reasonably prudent and careful authorized officer of Defendant insurance company, acting in good faith, would, on the evidence available, form an opinion that Alvin Blagg was on the date of the completion of his medical examination insurable and acceptable under Defendant insurance company's rules and practices for the amount, premium and rating class of insurance applied for?

Answer: 'Yes' or 'No'.

We, the Jury, answer: _____

If you have answered the foregoing Special Issue No. 1 'They did form an opinion', then and in that event only, answer the following:

### SPECIAL ISSUE NO. 3

What do you find from a preponderance of the evidence the opinion of the company's authorized officers was concerning Alvin Blagg's insurability and acceptability under the company's rules and practices for the amount, premium and rating class of insurance applied for upon the date of his physical examination?

Answer: 'The opinion was that he was insurable and acceptable' or 'The opinion was that he was not insurable and acceptable'.

We, the Jury, answer: 'The opinion was that he was insurable and acceptable'

If you have answered the foregoing Special Issue No. 3, 'The opinion was that he was not insurable and acceptable', then and in that event only, answer the following:

SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the formation of an opinion that he was not insurable and acceptable, if you have so found, was not made in good faith?

Answer: 'It was not made in good faith' or 'It was made in good faith'.

We, the Jury, answer: _____

If you have answered the foregoing Special Issue No. 4 'It was not made in good faith', then and in that event only, answer the following:

SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that a reasonably prudent and careful authorized officer of the Defendant insurance company, acting in good faith, would, on the evidence available, form an opinion that Alvin Blagg was on the date of the completion of his medical examination insurable and acceptable under Defendant insurance company's rules and practices for the amount, premium and rating class of insurance applied for?

Answer: 'Yes' or 'No'.

We, the Jury, answer: _____"

———◆———

During its deliberations the jury submitted the following question to the judge: " * * * Please give us a clear explanation of Special Issue #1." The court answered as follows:

"In response to your request for instructions, you are being asked 'Do you find drom a preponderance of the evidence that the defendant insurance company's authorized officers ever formed an opinion regarding Alvin Blagg's insurability and acceptability upon the date of his physical examination?' "

Counsel for National agreed to the additional instruction of the court but preserved the objections previously made to submission of original special issue No. 1.

We have concluded that appellant's points one and three which assert in substance that the evidence is legally and factually insufficient to support the jury answer to special issue 3 are well taken and require reversal of the judgment. Those points will first be discussed.

The testimony of Kenneth F. Haas, an underwriting manager for National in Nashville, Tennessee, reflects the following: Mr. Blagg's application, dated July 6, 1965, was first referred to the district office at Victoria, Texas where it was received on July 9, 1965. It was checked against the records there to see if there had been a previous transaction with Mr. Blagg, and a commercial inspection report was ordered. At appellant's request Blagg was examined by Dr. Don L. Wendt in Victoria, Texas on July 16, 1965. The doctor's report showed that Mr. Blagg's blood pressure and other indications of health were normal when Blagg was examined, and rated Blagg as a first class risk. The report of this physical examination together with the application was then forwarded to the office of National in Nashville, Tennessee on or about July 19, 1965. After a record check in the office the matter was referred to Haas on or about July

21, 1965. On that date a letter was written, over the signature of the Medical Director, to Dr. Wendt at Victoria, Texas. It read in part as follows:

"July 21, 1965

Dr. Don L. Wendt
1211 N. Depot
Victoria, Texas

SUBJECT: Blagg-Alvin-L.
3302 N. Vine, Victoria, Texas
Born: June 26, 1924, Humble, Tex.
Debit #3, Victoria
(Und. Dept.)

Dear Doctor:

To help us evaluate this risk, please reexamine applicant as indicated by 'XX' in space below:

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

XXX4. Inquire for any history or symptoms of abnormal blood pressure. If applicant has ever been or is now being treated for hypertension, please give us date and duration of treatment and the type of medication used, if known. Please record the systolic and diastolic readings with the applicant in a sitting position on two different days, preferably in the afternoon.

XXX5. Please forward 1 ---XXX urine specimen to the Home Office.

XXX6. Applicant has history of high blood pressure, 160/110, and treatment.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*"

On July 21, 1965, National also wrote a form letter to its agent at Victoria, Texas, stating "We must have a further report from Dr. Don L. Wendt to whom we are writing today. In a few days please check to see if this report has been completed." A similar follow-up request was made on August 3, 1965. The first sentence of the form reads "The information requested is necessary before action can be taken. Getting this information to us without delay will expedite final action on application." On August 5, 1965 the agent at Victoria replied on the bottom of the form as follows:

"8-5-65

Our representative Mr. Harris contacted Dr. Don L. Wendt's office and was advised that they have no record of receiving any correspondence from you with reference to this. Would you please write Dr. Wendt again and if possible, send me a copy of your letter so that we can follow up on this and be sure that he furnishes you with information needed.

Victoria
/s/ W. S. Stanton"

Haas testified at length regarding the materiality and importance to an underwriter of securing and evaluating information concerning the blood pressure of an applicant where there is a problem indicated in such respect or treatment had been administered for same. Haas further said that when a policy could not be issued as applied for he tried to work out a policy based upon a different rating and higher premium and would send it to the agent to submit to the applicant to see if it would be acceptable. He conceded that Mr. Blagg was not advised as to such procedure

or Haas' subjective thoughts about the matter. Haas did not ever receive the additional information requested from Dr. Wendt, and did not know that the requested re-examination was ever made by the doctor. As a matter of fact it was not. Haas further testified that on July 21, 1965 he formed an opinion that Mr. Blagg was not insurable on July 16, 1965, the date of his medical examination, for the plan, classification and rate applied for. Haas never did notify anyone prior to Mr. Blagg's death that Blagg was uninsurable at the rate applied for or that his application was being declined. Haas initialed the application "Declined, Code 5" on August 19, 1965, which he said meant that the file was incomplete. However, another exhibit identified by Haas in part showed the following:

THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY

| DECLINED NO. D281347 | DISTRICT VICTORIA | AMOUNT 10M-MO | DATE THIS NOTICE 20AUG65 |
|---|---|---|---|
| NAME BLAGG-ALVIN-L | | STREET AND NUMBER 3302 N VINE | |
| PLACE AND DATE OF BIRTH TEX 26JUN24 | | CITY VICTORIA | STATE ZIP CODE TEX |
| OTHER NUMBERS 7/19/65 | | AGENT HARRIS 3 COLL. BOOK PAGE | DEBIT OR TITLE 307 |
| APPLICATION SERIAL NUMBER 191347 | | SPECIAL INSTRUCTIONS TO DISTRICT OFFICE CODE NUMBER V ADVANCE COLL. $ 8.50 | |

INSURANCE SERVICES DEPARTMENT
UNDERWRITING DIVISION—DISTRICT OFFICE COPY

## TO THE MANAGER:

We regret that it is necessary to decline this application. Please notify the agent and the applicant promptly of this action.

Note reason for declination checked below:

☐ I—Build
☐ II—Physical
☐ III—Occupation
☐ IV—All Other Causes
☒ V—Application Retired. See Special instructions above.

Haas also identified a letter dated August 18, 1965 from W. S. Stanton, the company agent at Victoria, Texas to the underwriting manager of National, reading as follows:

"August 18, 1965

Mr. J. D. Gwaltney, Underwriting Mgr.
Div. II-Ordinary Elective Protection

Re: Alvin L. Blagg
Applicant
Our Debit 3
Agent B. R. Harris

Dear Mr. Gwaltney:

You have a file on the above, ending with form 2046A dated 8–6, which has a reply thereon from us dated 8–9.

This is to advise that Mr. Blagg died suddenly, and I believe of a heart attack this past either Friday or Saturday.

Your checking on this file and advising what we should tell the beneficiary would be appreciated. This is a binding receipt case.

Yours very truly,

W. S. Stanton, Mgr.

WSS:kb"

———◆———

Haas said this was the first notice of Blagg's death received by the home office, as far as he knew. Blagg's application was retired on the day Stanton's letter was received.

Dr. Don L. Wendt was called as a witness for appellee. He testified in substance as follows: He made a routine medical examination of Mr. Alvin Blagg at the request of National. He was asked a number of questions concerning his report and in general verified the information contained therein. He did not find anything wrong with Mr. Blagg's blood pressure or heart on the date of the examination, and rated Blagg a first class risk. He did not take a medical history from Blagg and said it was filed separately from the report of the physical examination. On cross-examination by counsel for National Dr. Wendt said that he had never been connected with the underwriting department of a life insurance company. However, he said he knew from experience that insurance companies are interested in the blood pressure of an applicant, particularly if there is a history of high blood pressure, and this would be a significant factor in determining if an applicant was insurable. He testified concerning certain drugs used in the treatment of high blood pressure. He said that on the date of the examination Blagg's blood pressure was 120 systolic and 90 diastolic, and that the latter was from normal to high. Dr. Wendt said that he had received two requests from National, heretofore mentioned, concerning re-examination of Blagg but his policy was to hold the agent handling the application responsible for contacting the applicant and having him come to the doctor's office. This was not done and Dr. Wendt did not see Mr. Blagg again until he pronounced him dead in August, 1965.

■ This case is ruled by the decision in United Founders Life Insurance Company v. Carey, 363 S.W.2d 236 (Tex.Sup.Ct.,

1963). The conditional receipt in the instant case is in substantially the same wording as that in the cited case, and the variations are not material. Under the holdings in *Carey* a conditional receipt of the type here involved provides temporary life insurance from the date of the medical examination provided the authorized officers of the insurance company subsequently: (1) Form an opinion that the applicant was on the date of the physical examination insurable and acceptable under the company's rules and practices for the amount, premium and rating class applied for; or (2) Form an opinion that on the date of his physical examination the applicant was not insurable and acceptable for insurance under the company's rules and practices for the amount, premium and rating class applied for, and such determination is not made in good faith, and a reasonably prudent and careful authorized officer of the company, acting in good faith, would, on the evidence available find that the applicant was on the date of his medical examination insurable and acceptable for insurance under the company's rules and practices for the amount, premium and rating class applied for, or (3) Arbitrarily refuse to form an opinion concerning the applicant's insurability and acceptability for life insurance when a reasonably prudent and careful authorized officer of the company acting in good faith would, on the evidence available, find that the applicant was on the date of his medical examination insurable and acceptable under the company's rules and practices for the amount, premium and rating class applied for.

■ The answer of the jury in response to special issue No. 1 when considered along with the additional charge of the court amounts to no more than a finding that the authorized officers of National formed an opinion regarding Alvin Blagg's insurability and acceptability on the date of his physical examination—one way or the other. The finding of the jury on special issue No. 1 as originally submitted would have supported a judgment for Mrs.

Blagg, provided it was sufficiently supported by evidence. This is also true as to the jury finding on special issue No. 3, which found in effect that the opinion of the company's authorized officers concerning Alvin Blagg's insurability and acceptability of under the company's rules and practices for the amount, premium and rating class of insurance applied for on the date of his physical examination was "that he was insurable and acceptable". However, as we have indicated, appellant's points that the evidence is legally and factually insufficient to support the jury answer to special issue No. 3 are well taken, and without such finding there is no basis herein for a judgment in favor of Mrs. Blagg.

In *Carey* the Supreme Court held that there was no evidence to support a jury finding that the proper official of the insurance company there had formed an opinion that the applicant was insurable and acceptable. The court pointed out that the company was in the course of making its investigation when the applicant died, but thereafter discontinued it and wrote a letter that it had determined that the applicant was not insurable and acceptable. The jury in the instant case was not required to accept the testimony of Haas, who was a highly interested witness, that he had formed an opinion on July 21, 1965 that Mr. Blagg was not insurable for the amount, classification and rate applied for. The jury could have found from the evidence either that Haas had formed an opinion that Mr. Blagg was not insurable or acceptable on that date or that he had not formed an opinion prior to the death of Mr. Blagg concerning the matter. However, the evidence is legally and factually insufficient to establish that Haas formed an opinion to the contrary—that Mr. Blagg was insurable and acceptable.

As in *Carey* appellee here was and is confronted with National's pleadings and tendered evidence that it had determined that Mr. Blagg was not insurable or acceptable on the date of his medical exam-

ination. On the re-trial of this case, if the evidence is the same as that contained in the present record, appellee could not recover on the theory that National through its proper officials had determined that Mr. Blagg was insurable and acceptable for life insurance as applied for on the date of his medical examination; and her recovery, if any, would necessarily have to depend upon one of the alternative theories above discussed.

In view of our holdings on appellant's points one and three, her points two, four, five and six become immaterial to disposition of the case.

The judgment of the trial court will be reversed and the cause remanded for new trial.