The NATIONAL LIFE AND ACCIDENT
INSURANCE COMPANY, Petitioner,

v.

Mrs. Alvin BLAGG, Respondent.

No. B–1174.

Supreme Court of Texas.

March 12, 1969.

Rehearing Denied April 23, 1969.

Guittard, Henderson, Jones & Lewis, O. F. Jones, III, Victoria, for petitioner.

Cullen, Mallette, Maddin, Edwards & Williams, Donald A. Edwards, Victoria, for respondent.

GREENHILL, Justice.

This is a suit upon an alleged contract of life insurance. Alvin Lee Blagg applied to the National Life and Accident Insurance Company for a life insurance policy, and at the time of his application he was issued a "conditional receipt" for his deposit of the first premium of $8.50 on the proposed insurance. Blagg died before any insurance policy was issued. His widow brought this suit against the company to recover $10,000, the amount of the policy applied for, basing her suit on the terms of the "conditional receipt" issued to Blagg. Trial was to a jury, and judgment was entered on the jury's verdict favorable to Mrs. Blagg. The Court of Civil Appeals reversed and remanded the cause for a new trial. 431 S.W.2d 396. The insurance company is the petitioner here, and the only point before us concerns the Court of Civil Appeals' alleged error in remanding the cause for a new trial rather than rendering judgment for the company.

Crucial to Mrs. Blagg's recovery was the question whether temporary life insurance was in effect at the time of her husband's death. The receipt involved contains the following provision:

"* * * Said deposit is received by the Company subject to the following conditions: (1) * * * Insurance under terms of policy applied for shall take effect as of date of said deposit or date of medical examination (if required), whichever shall be the later, provided that on that date Proposed Insured, in the opinion of the Company's authorized officers in Nashville, Tennessee, was insurable and acceptable under the Company's rules and practices for the Amount, Premium and Rating Class applied for."

Blagg was required to take a medical examination. It was given by Dr. Don L. Wendt in Victoria, Texas, on July 16, 1965. The Doctor's report reflected that Blagg's blood pressure and other indications of health were normal. In response to a question on the printed "Medical Examiner's Report" supplied to Dr. Wendt by the company, Dr. Wendt rated Blagg as a first class risk. It should be noted, however, that in filling out his written application form, Blagg stated that in 1962 he had been confined in a hospital for a general check up as required by his employer, with "results slightly low blood pressure."

On July 19 the doctor's report and the application form were forwarded from the company's district office in Victoria, where Blagg lived, to the company's home office in Nashville, Tennessee, where on July 21 the records were first brought to the attention of Kenneth F. Haas, an under-writing manager for the company. Mr. Haas testified that Blagg's application form together with the company's own records, which were compiled independently of any information supplied by Blagg or Dr. Wendt, showed that for three consecutive years prior to his application for insurance, Blagg had been treated for a blood pressure abnormality. The evidence shows that normal blood pressure for a man Blagg's age and size would be 140 systolic over 90 diastolic. (140/90). According to the expert testimony in the record, any reading above that level would be abnormal. The company's records reflected that in May of 1960 Blagg's blood pressure readings on separate occasions had been 160/110, 152/100, and 132/90. In 1961 it was 160/100. And as noted above, Blagg's application form showed that in 1962, he had been confined in a hospital with "results slightly low blood pressure."

In addition, Blagg answered "no" to a question on the application form inquiring if he had ever had any ailment or disease of the heart. Mr. Haas testified, in effect, that Blagg's negative response to the question, in conjunction with the company's own records and Blagg's admission that he had been confined in a hospital in 1962 with a blood pressure problem, raised a question in his mind concerning the reliability of Blagg's representation that he had never had an ailment or disease of the heart.

On the basis of the foregoing evidence, Haas testified that on July 21, the day Blagg's application and the company's records were first brought to his attention, he formed an opinion that Blagg was not insurable on the date of his medical examination, July 16, for the plan, classification, and rate applied for. For the purpose of determining whether Blagg would be in-surable at a *higher* rate, Haas testified that on that same date, July 21, and again on August 6, the company's medical director in Nashville wrote a letter at Haas's direction to Dr. Wendt in Victoria, requesting him to re-examine Blagg with specific instructions to inquire for any history or symptoms of abnormal blood pressure, and to record his blood pressure again on two different days with Blagg in a sitting position. A urine specimen was also requested to be forwarded to the home office for a laboratory analysis. Dr. Wendt was also requested to ascertain whether Blagg had ever been treated for hypertension, and if so, for how long and what medication or treatment he had received.

The July 21 letter to Dr. Wendt also contained the notation, "Applicant has history of high blood pressure, 160/110, and treatment." This circumstance corroborates the testimony of Haas to the effect that the company was aware before Blagg's death that he had a history of high blood pressure, and had determined him to be uninsurable at the standard rate for that reason. Dr. Wendt acknowledged having received the two letters requesting additional information, but due to a misunderstanding between Dr. Wendt and the Victoria office as to the procedure to be followed, Blagg was never re-examined by Dr. Wendt; and, as a consequence, neither the Nashville office nor Haas ever received the additional information requested. Blagg died suddenly of a heart attack on August 14, 1965. The company's home office was first notified of Blagg's death by a letter dated August 18, 1965, and his application for insurance was declined shortly thereafter. The company denied liability under the conditional receipt to Mrs. Blagg, the beneficiary, and this suit resulted.

As expressed by this Court in United Founders Life Ins. Co. v. Carey, 363 S.W. 2d 236 (1962), conditional receipts such as the one presently before us provide for temporary life insurance; and the insurance is to be effective on the date of completion of the applicant's medical ex-

amination *if* in the opinion of the company's authorized officers he was on that date insurable and acceptable according to the terms of the receipt.

 Thus, a beneficiary can prove that the temporary insurance provided by the receipt was in force when the applicant died by obtaining a fact finding that in the opinion of the officers of the insurance company the applicant was insurable and acceptable on the date of the completion of his medical examination. Even if the opposite finding is made by the jury, *i. e.,* the opinion was formed that the applicant was not insurable and acceptable on the date of the completion of his medical examination, the beneficiary can still prevail by obtaining a fact finding that the determination of uninsurability was not made in good faith. As a part of this second basis of recovery, it would also be necessary to obtain a finding that a reasonably prudent authorized officer of the insurance company, acting in good faith, would, on the evidence available, find that the applicant was on the date of the completion of his medical examination insurable and acceptable for insurance under the company's rules and practices for the amount, premium, and rating class set in his application for insurance.

 A third basis of recovery would be afforded under the *Carey* case if the insurance company arbitrarily refused to proceed to the formation of an opinion after the applicant's death, and a reasonably prudent underwriter confronted with the same circumstances would have formed the opinion that he was insurable.

In the trial of the instant case, all three theories were submitted to the jury in a total of five special issues. Special Issue No. 1 inquired whether the company's authorized officers ever formed an opinion regarding Blagg's insurability on the date of his medical examination. The jury answered: "They did form an opinion." Special Issue No. 3, which inquired *what* opinion had been formed, was answered:

"The opinion was that he was insurable and acceptable." These were the only two issues answered by the jury, and they formed the basis of the court's judgment in favor of Mrs. Blagg, the beneficiary. The other three special issues (Nos. 2, 4 and 5) were in a form sufficient to support a judgment under the second and third grounds of recovery outlined in the *Carey* case, but they were not answered because they were conditionally submitted upon the giving of opposite answers by the jury to Special Issues Nos. 1 and 3.

 The Court of Civil Appeals held that there was no evidence in the record to support the jury's answer to Special Issue No. 3 that the insurer had formed the opinion that Blagg was insurable and acceptable. Since this holding was not assigned as error in a motion for rehearing before the Court of Civil Appeals or in an application for writ of error before this Court, it is final in the Court of Civil Appeals, and we have no jurisdiction to review it.

 Under Rule 434, when a Court of Civil Appeals sustains a "no evidence" point, it is generally the court's duty to render judgment for the appellant because that is the judgment the trial court should have rendered. See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 359, 368–69 (1960). Rule 434 also provides, however, that the cause shall be remanded for a new trial "when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain * * *." This phrase has been interpreted to grant to the Courts of Civil Appeals the same discretion this Court has under Rule 505 to remand if "the justice of the case demands another trial * * *." Rule 505; London Terrace, Inc. v. McAlister, 142 Tex. 608, 180 S.W.2d 619 (1944); Williams v. Safety Cas. Co., 129 Tex. 184, 102 S.W.2d 178 (1937).

In this case, the Court of Civil Appeals did not render the judgment the trial court should have rendered. Instead, it remanded the cause to the district court for a new trial. Since the court had no authority to remand except in the interest of justice, its judgment would not be correct unless it remanded for that reason. But the Court of Civil Appeals in this case did not remand in the interest of justice; it assigned no reason at all for remanding the cause for another trial. It is possible that the subjective intention of the court was to remand in the interest of justice, but we have no way of determining if that is so. Neither the court's opinion nor its judgment reflect the basis of the court's action. We do not have before us the question whether the court abused its discretion in remanding in the interest of justice because the court did not *exercise* its discretion to remand in the interest of justice. The judgment of the court remanding for retrial is not in keeping with the rule of decision prescribed in Rule 434, and it cannot be permitted to stand.

We turn now to the question as to whether we should remand the cause in the interest of justice. As stated, the trial court rendered judgment for Mrs. Blagg on the jury's verdict. The Court of Civil Appeals sustained the company's point that there is "no evidence" to support the jury's verdict, reversed the trial court's judgment based on that verdict, and remanded the cause for a new trial. Having determined that there is error in the Court of Civil Appeals' judgment remanding the cause as it did, Rule 505 would normally require this Court to reverse the judgments of the courts below and render judgment that plaintiff take nothing. As noted above, however, Rule 505 also authorizes this Court to remand the cause for a new trial if the justice of the case so demands. C & R Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup. 1966); Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup.1966); Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846 (Tex.Sup.1954). Counsel for Mrs. Blagg concedes the finality of the Court of Civil Appeals' holding that there is no evidence to support the jury's finding to issue number 3 that an opinion of insurability was formed. Counsel argues, however, that evidence was produced at the trial which would have supported jury findings in favor of Mrs. Blagg on one of the alternative theories of recovery which were submitted to the jury by Special Issues Nos. 2, 4 and 5 and left unanswered because of the conditional submissions. We are requested in the interest of justice to permit a retrial of the case in order to give another jury the opportunity to make findings in Mrs. Blagg's favor on one of these alternative theories.

Our own review of the record convinces us, however, that a retrial of this cause would not subserve the interests of justice. More specifically, we cannot agree with the contention that "some evidence" was produced at the trial which would have supported jury findings on one of the alternative theories of recovery. As stated, a beneficiary can prevail in a suit upon a conditional receipt if he is able to establish that the formation of an opinion of *un*insurability was *not* made in good faith *and* that a reasonably prudent underwriter acting in good faith would have formed a contrary opinion; or, that the insurance company arbitrarily refused to proceed to the formation of an opinion *and* a reasonably prudent underwriter acting in good faith would have formed the opinion that the deceased applicant was insurable. Thus, the burden is on the plaintiff-beneficiary under either of the alternative theories to establish that a reasonably prudent authorized officer of the insurance company, acting in good faith, would, on the evidence available, find that the applicant was insurable and acceptable on the day of the completion of his medical examination. There is no testimony in this record to the effect that a reasonably prudent underwriter acting in good faith would form the opinion that Blagg was insurable and acceptable on the date of the completion of his medical examination. In fact, all of the testimony is to the contrary.

Mrs. Blagg contends that a reasonably prudent and careful underwriter, in good faith, would have formed the opinion that Blagg was, under the circumstances, insurable. But this Court does not judicially know that. It is a matter for the introduction of competent testimony. No witness gave testimony to facts which would have supported such a conclusion.

Mrs. Blagg was provided with ample opportunity on the trial of the case to produce evidence on this point which was crucial to her right to recovery on the alternative theories. There is no contention made that the case was tried on the wrong theory, or that the evidence has not been fully developed. Counsel for Mrs. Blagg conceded on oral argument that in all likelihood no new evidence would be available in the event of a retrial. A remand under these circumstances would merely afford an opportunity for another "bite at the apple." Jackson v. Ewton, 411 S.W.2d 715 (Tex.Sup.1967). We do not view this as a proper case in which to exercise our discretion to remand a cause in the interest of justice.

The judgments of the courts below are reversed and judgment is here rendered that the plaintiff take nothing.