Marion I. SILVA, Appellant,

v.

'SENTINEL LIFE INSURANCE COMPANY, Appellee.

No. 5549.

Court of Civil Appeals of Texas.

El Paso.

Oct. 24, 1962.

Rehearing Denied Nov. 21, 1962.

Calloway Huffaker and Harold Green, Tahoka, for appellant.

Edwards, Belk, Hunter & Kerr, El Paso, for appellee.

FRASER, Justice.

This is an appeal from a summary judgment denying the plaintiff in the court below, who is appellant here, any relief or recovery on a matter arising out of an insurance policy application.

Appellant brought the suit as the widow and beneficiary of Mike Marcus Silva, alleging and maintaining that the appellee is liable as an insurer of the deceased. There is some evidence that some discussions relative to a settlement took place, but apparently they were not successful, and appellant took a default judgment. This judgment was set aside by the trial court upon appellee's amended motion, and a new trial was granted. The case was then tried to the court, with the result that the court granted a summary judgment in favor of the appellee.

■ Appellants' first two points complain of the court's action in granting appellee's motion to set aside the default judgment and granting a new trial. We overrule these two points, as we believe the law to be well settled that when a case has gone to trial on the merits, the trial court's order setting aside the default judgment and granting the motion for such new trial is not subject to review on appeal from the judgment rendered at the second trial. We think this matter is well discussed and reviewed in the case of Ebaugh v. State, Tex.Civ.App., 342 S.W. 2d 221 (n. r. e.), which case discussed this particular situation. We do not cite additional cases, as a sufficient number are set out in the opinion of the case above cited. Appellant's first two points are therefore overruled.

■ Appellant's third point complains of the action of the trial court in granting ap-

pellee's motion for summary judgment and entering a summary take-nothing judgment against appellant. It appears that Mr. Silva, the deceased, (an employee of appellee insurance company) had been in the insurance business for approximately four years; had at one time been in charge of an agency office, and had successfully taken the training course and instructions offered by the appellee here, so that he was not unacquainted with the insurance business. The deceased made his application for a type of insurance described as "President's Family Security Guide", which provided for $5,000 preferred risk endowment at age 85, double indemnity, and a 20-year family income rider of $100 monthly. Mr. Silva sent with his application a check to cover the first premium. Within fifteen days of making this application, deceased met his death by drowning. Thereafter, the appellee declined any liability of an insurance nature. Again, it must be remembered that the deceased was an employee of appellee, and the record shows that he had the printed instructions relative to this type of policy and had successfully taken the training course to equip him to write this and other types of insurance. Appellant maintains that because her husband had paid the premium along with his application, and a receipt had been issued, that a contract of temporary insurance was in effect at the time of his death, and that it was not necessary for him to have had a medical examination or to have proven that one was not required. Appellant bases a large part of her position on the case entitled Colorado Life Co. v. Teague, Tex.Civ.App., 117 S.W.2d 849. However, we have examined that case and do not believe it is decisive or particularly helpful here, due to a difference in the wording of the application—which was to the effect that coverage would take effect on the date of the payment of the money (premium) if appellant was 45 years of age or under and was insurable as a standard risk on the date of application. Here, the receipt provided that the coverage would take effect "from the date of the medical examination therefor, or from the date of the declaration of insurability accepted in lieu of a medical examination provided the company shall be satisfied that: on said date said applicant was insurable in said company as a standard risk." The application executed by the deceased here provided these things which we have just quoted, and they were also set forth in the advance premium receipt. The deceased did not take a medical examination, and there is no evidence that we can find in this record, in lieu of the examination, to show that he was either insurable or not insurable. Also, the application provided that if application for this type of insurance be declined or postponed by the company, or if said application does not receive the company's approval within sixty days from the date of the medical examination, it shall be held that no insurance has ever been created, and the amount paid returned to the applicant. We do not believe that any insurance was ever issued or accepted by the appellee. Both the application and the receipt provide that either a medical examination must be taken or an acceptable declaration of insurability supplied in lieu thereof. Neither appears to have been done. Appellant argues that because the face of this policy mentions the figure of $5,000, a medical examination was not necessary or essential to the granting of the insurance. This is contradicted by the testimony of the insurance officials, who stated that they put out all but $1,000 of this type of insurance to other companies for re-insurance, and that they considered this policy's liability at a figure of $23,000 or more, because of the double indemnity and the $100 a month income provision. These officials testified that the application was simply being held in a waiting category, and that no insurance had issued or could issue until the medical examination or proof of the lack of necessity therefor had been presented to and accepted by the company; also, that the company carrying the re-insurance would not accept this policy unless these conditions were met. We refer again to the fact that the company could, even

after the receipt of the result of medical examination, decline to issue the policy, and at the end of sixty days the matter would be all over and the premium returned. We believe this unfortunate situation falls into the category that the deceased had made application for insurance which had not been accepted or acted upon. There is no indication that he had been lulled into any sense of security or deceived in any way by the company. On the contrary, he had been trained by the same company himself, and it is brought out that in the instructions given to the deceased by the appellee relative to this type of insurance —to-wit, "President's Family Security Guide"—there was contained in printed form on such instructions the following statement: "Each applicant for this package must have a medical examination." Also, it is brought out that the agent has no authority to make any changes or mod-- ify or amend applications or insurance of the company.

The case of Debenport v. Great Commonwealth Life Ins. Co., Tex.Civ.App., 324 S.W.2d 566, enunciates the accepted doctrine that an insurance company has the right to accept or reject applications as it sees fit, without having to give any reason for so doing; and that case (and others) point up the settled law that a delay by the company in passing on an application for life insurance does not ordinarily give rise to action for breach of contract or for tort. Also, Southwestern Life Insurance Co. v. Evans, Tex.Civ.App., 262 S.W. 2d 512, holds that there is no contract of insurance even though the premium be paid in advance if the application provides that the insurance can take effect only after certain events have transpired. The two cases above cited, in their discussion, also make it clear that the payment of the first premium does not necessarily give rise to temporary insurance. Again, we must point out that the instructions given by the appellee to the deceased plainly pointed out that the type of insurance for which he had applied required a medical examina-

ion of the applicant; also, that the record does not indicate that there was ever any declaration of insurability supplied in lieu of medical examination, nor is there any evidence in writing or verbally that the company had made any exception or modification of its rules for its employee, Mr. Silva. As we see it, this application was pending, and on the basis of the authorities cited above no temporary insurance was created by the payment of the premium along with the application; and, as a matter of fact, no insurance coverage of any kind had been extended or granted by the appellee. In other words, their contractual relations had not reached the point of consummation. We have studied the cases submitted by the appellant in her thoroughly documented brief, but we do not believe there was any error in the judgment of the trial court. Appellant's Point of Error No. Three is therefore overruled.

Appellant has also maintained in other points that the court erred because there were matters of fact to be decided here, and that one was whether or not it was necessary for deceased to undergo a medical examination. We think this has been disposed of in our prior discussion, and—in any event—the necessity of a medical examination as a prerequisite, we think, is a matter of law. Whether Mr. Silva was insurable or not from a medical standpoint is a matter of fact, but that is not the point at issue here. The point is that the application and the receipt, as well as Mr. Silva's instructions, plainly point out that a medical examination is a condition precedent to the issuance of this type of insurance; and even then, if the company does not act within sixty days, the matter can be considered canceled. In other words, the matter decisive of this lawsuit, is the legal construction of the uncontradicted facts as they exist.

Summing up, Mr. Silva did not have a medical examination; there is no declaration in lieu thereof in the record; the company did not issue any insurance within sixty days of the application. There-

**734**

fore, we are constrained to hold that the appellant cannot recover.

We do not pass on the matter of the *statute of limitations because it is our opinion that if there was any contractual rela*tion here at all, it would not come under the two-year statute. As we have said, we do not find from the record—and of course naturally could not, since the applicant was dead—that there was any verbal or oral contract or modification of the company's policy between the deceased and the company.

For these reasons appellant's points are all overruled, and the judgment of the trial court is affirmed.