**GREAT SOUTHWEST LIFE INSURANCE COMPANY, Appellant,**

v.

**Doretha James HENSON, Appellee.**

**No. 5732.**

Court of Civil Appeals of Texas.

El Paso.

Jan. 19, 1966.

Rehearing Denied March 9, 1966.

Fowler & Donk and Terry K. Donk, Odessa, Thompson, Coe, Cousins & Irons, Robert W. Porter, Dallas, for appellant.

Charles Winston and John Howze, Odessa, for appellee.

PRESLAR, Justice.

This is a suit upon an alleged contract of life insurance, based upon an application for a policy of life insurance and a "binding receipt" issued by the insurance company in connection with such application. The applicant, Henry Henson, died before the policy was issued, and suit was brought by his named beneficiary against the insurer, Great Southwest Life Insurance Company. Trial was to a jury and, based on the jury's verdict, judgment was for the plaintiff beneficiary, Doretha James Henson, for the face amount of the policy applied for, $5,000.00. We affirm.

Henry Henson made application to the Great Southwest Life Insurance Company for insurance on his life on September 11, 1961, paid the first month's premium with the application, and was issued a receipt completed on the following form:

"RECEIPT

"Do not detach unless full first premium is paid with application.

"Received from ———————— the sum of ——— ($———) Dollars for the full first premium specified in the application for insurance in the Great Southwest Life Insurance Company, Dallas, Texas.

The insurance under the policy for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if required) whichever is the later date if, in the opinion of the authorized Officers of the Company at its Home Office in Dallas, Texas, the applicant is insurable and acceptable for insurance under its rules and practices on the plan of insur-

ance, for the amount of insurance, and at the premium rate set forth in the application, exclusive of any amendments in the space for 'Home Office Additions or Corrections'. However, if the applicant dies prior to the Company's actual issuance and delivery of the policy applied for, the total liability of the Company under this receipt and other insurance in force in this Company shall not exceed $50,000."

Henry Henson died of a heart attack on October 10, 1961, and at that time no policy had been issued, but his application was being processed in the home office of the insurance company at Dallas, Texas, where it had been received on September 13, 1961. The trial court submitted the following issues (and others not material to this appeal) to the jury, which answered them as indicated:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the proper official of Great Southwest Life Insurance Company approved the application of Henry Henson for insurance on his life?

"Answer 'Yes' or 'No.'

"ANSWER:  Yes

### "SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that prior to Henry Henson's death in the opinion of the proper official of Great Southwest Life Insurance Company Henry Henson was insurable and acceptable for insurance under its rules and practices on the plan of insurance, for the amount of insurance and at the premium rate set in his application for life insurance?

"Answer 'Yes' or 'No.'

"ANSWER: No

"If you have answered the foregoing Special Issue No. 2 'No'. and only in such event, then answer Special Issues Numbered 3 and 4.

### "SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that such opinion, if any was not made in good faith?

"Answer 'Yes' or 'No.'

"ANSWER: No

### "SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that a reasonably prudent and careful authorized officer of Great Southwest Life Insurance Company, acting in good faith, would, on the evidence available, find that Henry Henson was at the time of such opinion, if any, insurable and acceptable for insurance under said company's rules and practices on the plan of insurance, for the amount of insurance and at the premium rate set in his application for life insurance?

"Answer 'Yes' or 'No.'

"ANSWER: No.

Both parties moved for judgment, and, as indicated, judgment was for the plaintiff, and defendant (appellant) assigns two points of error, which are:

1. "The trial court erred in over-ruling defendant's motion for judgment upon the jury's answers to special issues number 2, 3, and 4."

2. "The trial court erred in over-ruling defendant's motion for new trial because the jury's answer to special issue number 1 does not support a judgment for plaintiff."

Under these broad assignments it is contended that the relationship of the parties being contractual, the language of the application and receipt controls, and the jury having found that a proper officer of the insurer never formed the opinion that Henson was insurable and that such opinion

was reached in good faith, the terms of the contract were never met; that the application was an offer which the company had a right to accept or reject, and the findings show non-acceptance, so that a contract never came into existence.

Whether or not a receipt of the nature of the one here involved provides temporary insurance or interim insurance has been much before the courts. The holdings are analyzed in 2 A.L.R.2d 943, and Vol. 1, Later Case Service, A.L.R.2d 183, and in an article in 44 Yale Law Journal 1223. The latest cases on the construction of such receipts are digested in the January, 1966, issue of Insurance Counsel Journal, Vol. 1 at page 32.

■ In a majority of the jurisdictions, it is held that the question of whether interim insurance is provided by the "conditional receipt" or "binding receipt" is determined by the particular wording of the receipt. In what must be considered a minority view, some states hold that the acceptance of the premium and the issuance of the receipt provides interim insurance. Such holdings are usually on the basis that otherwise the applicant would be paying for insurance for a period of time when he actually had no coverage. Texas decisions have been that the insurer had the right to accept or reject the application, and that a contract of insurance did not come into existence until acceptance. Silva v. Sentinel Life Insurance Co., Tex.Civ.App., 361 S.W.2d 731 (n. r. e.). Debenport v. Great Commonwealth Life Insurance Co., Tex. Civ.App., 324 S.W.2d 566, held that there was no interim insurance where there was no evidence that the application was approved by the insurer. In the most recent pronouncement by our Supreme Court on the question, United Founders Life Insurance Company v. Carey, Tex., 363 S.W.2d 236 (1962), a receipt in language substantially identical to the one before us was construed. The receipt was held to be ambiguous, with ambiguities to be construed against the insurer, and fact questions

presented as to the question of acceptance. The court of civil appeals had affirmed a judgment for the beneficiary (347 S.W.2d 295), and in remanding the case for retrial the Supreme Court indicated that issues such as numbers 2, 3, and 4, above, were appropriate. Important to a determination of the case before us is the holding that the receipt *was intended to provide temporary insurance* for *some* period of time. The only question was—when was it to be effective? Speaking for the majority of the Court, Justice Hamilton wrote:

> "One thing we may say with certainty is that the receipt is intended to provide temporary insurance for *some* period of time. That conclusion necessarily follows from the express provision of the receipt that the insurance is to be effective upon completion of the medical examination *if in the opinion of the authorized officers the applicant is insurable and acceptable* rather than *upon acceptance of the application or upon issuance or delivery of a policy*. The opinion must be formed before the application is approved and a policy issued. There is no way of knowing how long in advance of approval of the application or issuance of a policy the requisite opinion will be formed, whether thirty minutes or three months, but in no event is the applicant to be without insurance until the application is accepted and the policy is issued. * * *"

The only material factual difference between the United Founders case and the case before us is that the applicant there had been required to have a medical examination and had completed it before his death, and in the case before us the applicant died before knowing any examination was desired. It was to meet the former situation that Justice Hamilton formulated the above issues. There is testimony in the case before us by the chief underwriter of appellee, the officer who passed on applications, that he had determined that Henson should have a medical exam-

ination; that he had communicated that to the agent in Odessa who took the application. The agent testified to having received the request on October 8th, but stated that he was unable to locate Henson on October 9th, before Henson's death on October 10th. Henson's application shows it to have been approved by the chief underwriter on September 12, 1961, given a policy number, and an effective date of September 28, 1961; but these notations had a line drawn through them, and the chief underwriter testified that he drew such lines, but we are not given the date that such action was taken. He also testified that at one time he had approved the application, but later changed his mind and canceled it. We view all of such testimony as unimportant in our consideration here, for the jury found that the proper officer of the insurer approved the application, and appellee has not challenged the absence or sufficiency of the evidence to support such finding. This court is thus bound by such finding, which is a different situation from that which existed in the United Founders case. There the court was trying to ascertain when the various factors were determined which led to an ultimate conclusion of approval or disapproval of the application. The court there did not have established approval, but was faced with the problem of determining when the interim insurance would be effective short of, or prior to, ultimate approval. Note Justice Hamilton's language: "The opinion must be formed before the application is approved and a policy issued. There is no way of knowing how long in advance of approval of the application or issuance of a policy the requisite opinion will be formed, whether thirty minutes or three months, but in no event is the applicant to be without insurance until the application is accepted and the policy is issued."

In the case before us, we have a jury finding that the proper official of the insurer approved the application of Henry Henson for insurance on his life. As indicated, we are bound by that finding in the state of the record before us. It is the final step, short of issuing the policy, in passing on the application. Other opinions as to the state of the applicant's health, his insurability, etc., are but factors in determining the ultimate question of approval or disapproval. Thus, we think that Issues 2, 3, and 4 must yield to Issue 1. Issue 2 is not a finding that an opinion was formed that the applicant was *not* insurable. Rather, it is a finding that the insurer never did form an opinion that he was insurable. That they never had an opinion that he was insurable is not the same thing as an opinion that he was not insurable. The latter would be in conflict with their good judgment in approving the application, but we do not have such a finding here. Regardless of what their opinions were, the fact remains that the application was approved. Issue No. 1 may have been too broad or too general, but it was submitted without objection. We adhere to the rule that the terms of the receipt must be met, and that the burden of proof is on the applicant's beneficiary to prove that the temporary insurance provided by it was in force at the time of the applicant's death, and we are of the opinion that the record before us calls for an affirmance of the judgment so holding.

Both assignments of error are overruled, and the judgment of the trial court is affirmed.