**LIFE INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**FIRST NATIONAL BANK OF FORT WORTH, Trustee, Appellee.**

No. 17108.

Court of Civil Appeals of Texas, Fort Worth.

April 10, 1970.

Rehearing Denied May 8, 1970.

Thompson, Knight, Simmons & Bullion, and Timothy E. Kelley, John A. Gilliam, and John A. Mackintosh, Jr., Dallas, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn, and Richard L. Griffith, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

The appeal is by a life insurance company, hereinafter termed LINA, from a judgment for insurance policy benefits awarded the trustee for the beneficiary of a certain group life insurance policy covering one Frederick L. Davis, deceased. The judgment appealed from was a summary judgment granted upon motion of the trustee bank.

Affirmed.

The question which controls the disposition of the case was whether or not the insurance policy in question was in force and effect so that LINA "covered" the risk of Davis' death "as of" the time it occurred.

■ The judgment is to be affirmed because of the undisputed fact that LINA, through its authorized representative, "accepted" the application for insurance in behalf of CENTECO and its employees, thereby making effective LINA's contractual obligation to pay life insurance benefits because of the death of Frederick L. Davis.

Mr. Davis died September 4, 1966. The CENTECO written application for insurance (dated prior to September 1) had not been forwarded to the LINA home office. The insurance for which application was made was to be effective September 1, 1966. At the home office the company of-

ficial with the authority to approve applications for insurance, and thus effectuate a binding contract of insurance, was a Mr. Frank Carpenter. The local underwriting office of LINA called him on or about September 9, 1966 and notified him of the circumstances, including the fact that Mr. Davis had died. At Carpenter's instructions the local office forwarded CENTECO's written application for insurance. It was received in the LINA home office on or about September 11, 1966. The occasion for the forwarding and receipt was Carpenter's opinion, from what he had been told, that the application for insurance had been made in good faith. He intended to make an independent investigation to satisfy himself upon certain matters before finally deciding whether to accept the application "as of" a date prior to September 1, 1966 and effect his company's liability as beginning upon that date (in accord with the understanding of both CENTECO's officials and the LINA local agent).

The fact that a "policy number" was assigned to the file opened at the LINA home office would be without any compelling effect, certainly as applied to the consideration of the case on summary judgment; and neither would the fact that there was processing of CENTECO's check for deposit premium. What would be of conclusive effect would be the action of Frank Carpenter upon receipt of the application at his desk. Conclusive, and admitted in his deposition, was the fact that he desired to ascertain two facts before he made a decision to "accept" or "reject" the CENTECO application, and thereby to either form a contract of insurance by his "acceptance" of the "offer" presented by the application or to refuse to thus contract by a "rejection".

These two facts desired to be ascertained by Frank Carpenter were: (a) to determine whether Bankers Life of Nebraska (the insurance company which had the group life insurance contract with CENTECO upon its employees—including the deceased—prior to September 1, 1966) had received a cancellation notice from CENTECO, effective as of midnight, August 31, 1966;—and (b) to determine whether Bankers Life of Nebraska's insurance policy with CENTECO provided for an employee conversion privilege in the event of the cancellation of that company's policy.

Carpenter attended this investigation of facts by direct telephonic inquiry of Bankers Life officials. By them he was informed that Bankers Life was "off the risk" theretofore existent after August 31, 1966, and that there was no employee conversion privilege applicable under its policy in the event of its cancellation.

In view of the information acquired by telephone Frank Carpenter, for LINA, decided to "proceed with the risk" because he felt that CENTECO's application had been made in good faith and because it did not seem morally right that the deceased should be left without insurance protection merely because his employer had decided to switch group carriers.

It is LINA's contention that because its "final approval" of CENTECO's application for insurance had not been given despite Carpenter's action and no contract had, at this point, come into existence. It is the contention of the appellee bank that a contract was formed as a matter of law. It is its further contention that the aforementioned "final approval" is no more than a procedural formality which would not affect disposition of the case. If appellee is correct the entry of summary judgment in its behalf was correct. We believe it to be correct.

To illustrate the matter of "final approval", mentioned above, we note the following: LINA contends that there was no final "acceptance" because several more underwriting steps had to be taken. In his deposition Mr. Carpenter testified, as follows:

"Q. * * * Can you elaborate on the meaning of what that entails, what that means?

"A. That would mean proceeding with all the underwriting work required in order for us to actually assume the risk on a case.

"Q. This is paper work we are talking about, is it not?

"A. Yes, this is paper work.

"Q. Going through and filling in the necessary blanks and setting forth the thing you told me about before—I forget what you told me it was, but the little sheet that says, we have accepted the risk. Now you indicate your—

"A. This would involve the underwriter actually setting down the specification to be sent to other departments within the Group Department for the actual preparation of the materials to be used.

"At this point we had not assumed risk on the case. That would not be done until all other matters had been cleaned up within the Underwriting Department."

Further elaborating in his opinion Mr. Carpenter stated his conclusions that no contract would be effected, despite his decision to "proceed with the risk", and instructing his subordinate so to do, as actually occurred. Among his conclusions as to what would be necessary was the preparation of the insurance contract and forwarding it to the applicant for insurance along with a form termed "final application", which would accompany the policy of insurance anticipated to be delivered to CENTECO, and which would have required CENTECO if such a "final application" had been sent to it to sign it for return to LINA. Relative thereto a William Thomas Forrest, head of LINA's Group Department in LINA's Dallas, Texas, office testified in his deposition relative to company procedure upon delivery of a group insurance policy and its attendant presentation to the company insured thereby along with the "final application", as follows:

"A. * * *Here is a copy of the final application. It is in two parts. When we deliver a policy to the Policyholder, he signs both of these copies. We take one and we leave one with his policy."

In his deposition Mr. Carpenter testified relative to the "final application", as follows:

"Q. All right, so this little tear-off thing comes back, the Company at that time has accepted and the only thing that is left to do is for the applicant himself to sign and say he is ready and it is approved or he likes the way it is, once he signs the thing in effect your acceptance has already been given, it is just up to him to say that's right?

"A. That's correct.

"Q. It is a kind of affirmation of what is originally done?

"A. Right."

As previously indicated Mr. Carpenter, for LINA, decided after talking with Bankers Life to "proceed with the risk". It is our holding that such constituted an "accepted offer" which brought the parties into contractual relationship. There is no question but that consideration existed in support of the contract and no issue relates thereto.

Before conclusion of policy preparation, etc., Carpenter received further communication from Bankers Life. He was informed that though such company had received verbal cancellation from CENTECO and was proceeding in its office upon the theory that its policy was canceled, it had thereafter discovered that its policy provided for cancellation *only* upon receipt of a written cancellation notice, which had not been received, and that a claim had been filed for benefits under its policy because of the death of Frederick L. Davis.

It was thus brought to Mr. Carpenter's notice that not only was a claim being brought and prosecuted against LINA but also against Bankers Life, which company

admittedly did not have the type of cancellation notice which its policy required. In view thereof Carpenter, for LINA, declined to issue any policy and denied all liability. He confirmed, through an investigation conducted by its local agent, that CENTECO was insisting that Bankers Life remain on the risk after August 31, 1966 and that it had forwarded to Bankers Life a premium to keep the policy of that company in force through September of 1966.

 It was indicated in the record that it is contrary to custom and practice in instances of group life insurance for more than one company to insure the employees of any particular employer, and that a company which desires to enter into such an insurance contract will nevertheless not do so unless it is to be the only insurance company on the "risk". In the mind of Carpenter it was unfair and inequitable for an employee of CENTECO to claim the benefits of a contract with it and at the same time the benefits under an insurance contract of another company whose policy—under the view of LINA—should have been canceled. Any logic which might be attributed to such a view would be necessarily grounded in some theory of equity. However, in the instant situation the controversy is to be resolved according to principles of law, equity being without application.

An analogous situation to the question of a "changed mind" was presented in Great Southwest Life Insurance Company v. Henson, 401 S.W.2d 89 (El Paso Tex.Civ. App., 1966, writ ref., n. r. e.). That was a jury case tried upon the merits, but where the facts and circumstances are necessarily without dispute as in the instant case there would be no difference in the principles of law to be applied to such established condition. In *Henson* a receipt issued by the insurance company was so worded that the insurance was to take effect upon approval of the application for insurance at the company's home office. The proper home office representative approved the application, but subsequently changed his mind before there was any issuance of a policy. The insured died, and his beneficiary sued the company on the ground that the insurance was in effect by virtue of the initial approval, although no policy was issued, and although notice of approval had not been conveyed to the insured. The judgment for the beneficiary was affirmed, with the appellate court emphasizing the fact that the procedural steps of processing the application and issuing the policy had not been completed before the home office representative changed his mind was irrelevant and did not affect the force and efficacy of the initial approval. Recited in the opinion was the following: "In the case before us, we have a jury finding that the proper official of the insurer approved the application of Henry Henson for insurance on his life. As indicated, we are bound by that finding in the state of the record before us. It is the final step, short of issuing the policy, in passing on the application."

Upon the question of LINA's acceptance of the offer of CENTECO it is admitted (both under Carpenter's deposition and in LINA's answers to the Request for Admissions made under provisions of Texas Rules of Civil Procedure 169, "Admission of Fact and of Genuineness of Documents") that such had relation to the application which was considered by Frank Carpenter when he directed his subordinate to "proceed with the risk". This, we hold, constituted the "acceptance" which formed a completed contract of insurance, as result of which there arose LINA's liability to pay death benefits because of the death of Frederick L. Davis. See Colorado Life Co. v. Teague, 117 S.W.2d 849, 853 (Eastland Tex.Civ.App., 1938, writ dism.), and text of Corpus Juris cited.

Our discussion has application to the controlling elements decisive of the result on appeal. In any event we have severally considered every point of error presented to us and overrule all of them.

Judgment is affirmed.