# Supreme Court of Texas

No. 24-0516

Ron Valk d/b/a Platinum Construction,
*Petitioner*,

v.

Copper Creek Distributors, Inc. and Jose Doniceth Escoffie,
*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued October 8, 2025**

JUSTICE HUDDLE delivered the opinion of the Court.

When a party presents multiple grounds for reversal of a judgment on appeal, appellate courts must first address issues that, if meritorious, would require rendition. This longstanding rule is intuitive and promotes judicial economy by moving the case to the greatest achievable degree of finality.

Here, the court of appeals found charge error, concluded it was harmful, and remanded for a new trial. But in doing so, the court leapfrogged issues raised on appeal that, if sustained, would result in

rendition of judgment for the appellants. Taking that shortcut was reversible error in itself. And here, the failure to grapple with the case as a whole yielded a second error: a harm analysis too underdeveloped to justify discarding a jury verdict in favor of a do-over. We reverse the court of appeals' judgment and remand the case to that court.

## I. Background

In 2017, Ron Valk d/b/a Platinum Construction hired Don Triplett as a superintendent for two Platinum self-storage center construction projects, where Triplett supervised large teams of workers. Triplett later hired Darryl Briggs, with whom he had worked on other business ventures, to help supervise the projects. A few months later, Triplett and Briggs, along with Triplett's husband, Doni Escoffie, formed a company for their own residential construction projects—Copper Creek Distributors, Inc.

Soon after Copper Creek came into existence, Platinum discovered the fraudulent scheme at the center of this case. Triplett was diverting Platinum personnel to work on Triplett's residential construction projects while they were being paid to work for Platinum. The scheme unraveled when Platinum learned that Briggs was not present at the jobsite where Platinum records showed he was clocked in. When confronted, Briggs responded that he was following Triplett's orders to help with Triplett's projects. Further investigation revealed that Briggs was one of many Platinum workers Triplett diverted.

Platinum sued for theft of services, tortious interference with an existing contractual relationship, and unjust enrichment. Platinum alleged Triplett concocted the labor-theft scheme for Copper Creek's

2

benefit and executed it with Copper Creek's other owners, Briggs and Escoffie.

As discovery proceeded, the spoliation issue at the center of the court of appeals' opinion took shape. Platinum learned that Copper Creek no longer had access to its emails or QuickBooks accounting records for the relevant time period and alleged that Copper Creek closed those accounts to conceal the records from discovery. For its part, Copper Creek denied wrongdoing, claiming that any missing emails or records resulted from the fact that its accounts were no longer needed and had lapsed for nonpayment.

Three months before trial, Platinum asked the trial court to sanction Copper Creek by including a spoliation instruction in the jury charge, asserting that the absence of Copper Creek's emails and QuickBooks records prevented Platinum from fashioning its damages case. Copper Creek responded that the request was premature—Platinum had neither identified discoverable emails or QuickBooks records that had been spoliated nor even obtained rulings on Copper Creek's discovery objections.[1] The trial court agreed with Platinum that a spoliation instruction was proper but deferred deciding the instruction's substance.

---

[1] Platinum previously moved to compel Copper Creek and Escoffie to produce their emails, but the record does not reflect any ruling. Platinum separately moved for sanctions against Escoffie, alleging he committed perjury when he denied ever using an email account associated with Copper Creek. The trial court heard and denied the sanctions motion in August 2022. Platinum then filed its motion for a spoliation jury instruction.

3

At trial, the defendants disclaimed liability and asserted that if anyone stole labor from Platinum, it was Triplett, whom Platinum had nonsuited after he filed for bankruptcy. They also criticized the damages evidence, contending both that it was untimely disclosed and that it was unreliable and conclusory, amounting to no evidence.

Platinum's retort before the jury was that Copper Creek's missing emails and QuickBooks records would have shored up Platinum's damages case, so Copper Creek should not be allowed to hide evidence that would prove the extent of the labor diversion and simultaneously argue that Platinum's damages estimates were incomplete. Platinum repeated this theme throughout the trial, referring to the emails and QuickBooks records as the missing pieces of the puzzle. Platinum mentioned the missing evidence in opening statements, cross-examination of Triplett and Escoffie, and closing argument—all without objection.

Copper Creek did, however, object to the spoliation instruction in the jury charge. The trial court overruled the objection and instructed the jury:

> Copper Creek Distributors, Inc. destroyed or failed to preserve evidence in this lawsuit, including accounting books and records and e-mails . . . . You may consider that this evidence would have been unfavorable to Copper Creek Distributors, Inc. on the issue of theft of services, tortious interference with existing contractual relationship, unjust enrichment and/or alter-ego.

The jury sided with Platinum and awarded $150,000 in damages for the labor theft, which was considerably less than the amount Platinum sought.[2]

Copper Creek and Escoffie raised eleven issues on appeal.[3] Among other things, they argued that Platinum's damages evidence (1) should have been excluded because it was not timely disclosed and (2) was contradictory and speculative lay-witness testimony that was legally insufficient to support the verdict. They also complained that there was legally and factually insufficient evidence to justify liability against Copper Creek or against Escoffie on the basis that he was Copper Creek's alter ego. Finally, Escoffie argued that limitations barred at least one claim.

The court of appeals reversed and remanded. 716 S.W.3d 759, 770 (Tex. App.—Dallas 2024). But in doing so, it considered only one issue: whether the trial court erred in submitting the spoliation instruction. *Id.* at 761. The court concluded the instruction was

---

[2] Shawn Valk, who oversaw Platinum's day-to-day operations, testified about Platinum's two damages models. The first relied on time-punch records at the worksites—in some cases, workers input their time manually instead of registering their arrival and departure through QR codes. Valk used these deviations from Platinum's standard policies, as well as his own observations, to estimate how often particular workers were "on the clock" for Platinum but physically located somewhere other than a Platinum worksite. Based on this model, Valk estimated that the value of the labor theft totaled around $311,000. The second damages model relied on Platinum's budgeting. Valk compared Platinum's budgeted labor costs to the actual costs and attributed overruns on the self-storage projects that Triplett and Briggs supervised to the labor-theft scheme. Valk testified that this methodology yielded damages of about $673,000.

[3] Briggs did not appeal.

5

erroneous and harmful and remanded the case for a new trial in the interest of justice, reasoning that the erroneous instruction prevented full development and presentation of the evidence. *Id.* at 768–70. Platinum petitioned this Court for review.

## II. Discussion

"[W]e have consistently held that when multiple grounds for reversal of a trial court's judgment are presented, courts of appeals should 'first address issues that would require rendition' and thus should consider those issues before ordering a remand." *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 836 (Tex. 2022) (quoting *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003)). This order of operations is mandatory.[4] *See, e.g., Huynh v. Blanchard*, 694 S.W.3d 648, 690 & n.69 (Tex. 2024); *Pool*, 124 S.W.3d at 201–02; *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999); *Lone Star Gas Co. v. R.R. Comm'n*, 767 S.W.2d 709, 710 (Tex. 1989).

The court of appeals rightly noted that our rules allow for a remand instead of rendition in some circumstances. *See* 716 S.W.3d at 769 (citing TEX. R. APP. P. 43.3). But it misunderstood the rule to confer "broad discretion" to remand the case for a new trial without first considering rendition points. *See id.* at 770. As we have explained in a similar context, ordering a new trial necessarily undercuts judicial economy. *See City of Fort Worth v. Pippen*, 439 S.W.2d 660, 668 (Tex.

---

[4] Of course, this mandatory order of operations governs only after an appellate court has answered "yes" to the threshold inquiry presented in every appeal: is our jurisdiction secure? *See, e.g., Rush Truck Ctrs. of Tex., L.P. v. Sayre*, 718 S.W.3d 233, 237 (Tex. 2025) ("Jurisdiction always comes first.").

1969) (considering "the problems of judicial administration" caused by a remand for a new trial after years of litigation).  But where ordering a new trial also undoes a jury verdict and requires that a new jury be empaneled, the decision is especially grave.  *See In re Rudolph Auto., LLC*, 674 S.W.3d 289, 302 (Tex. 2023) ("[D]isregarding a jury's verdict is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury.").

This Court's precedents demonstrate that there are circumstances in which an appellate court may determine that rendition would be warranted but nevertheless remand for further development in the interest of justice.  But those cases are few and far between—and they are almost always cases in which the governing law changed during the life of the case.  *See FieldTurf*, 642 S.W.3d at 836 (noting change in the law as the "most compelling case" for a remand in the interest of justice (quoting *Carowest Land, Ltd. v. City of New Braunfels*, 615 S.W.3d 156, 158 (Tex. 2020))).

Recent cases illustrate this.  In *Gill v. Hill*, this Court held that the court of appeals properly affirmed a summary judgment, but we nevertheless remanded to the trial court "based on intervening developments in the controlling law" that clarified the relevant burden of proof and admissible evidence.  688 S.W.3d 863, 871–72 (Tex. 2024).  We observed that a remand served the interest of justice because these developments—two opinions of this Court "crucial to [the] analysis," *id.* at 866—likely would have influenced the parties' motion practice at the summary-judgment stage.  *Id.* at 872.  And in *Rogers v. Bagley*, although we held that the plaintiff was required to serve an expert report to avoid

7

dismissal, we remanded to allow another opportunity to meet the requirement because our decision "substantially clarified" a "novel issue" about which the plaintiff reasonably may have been confused. 623 S.W.3d 343, 357–58 (Tex. 2021).

The principle justifying a remand—rather than rendition—in these cases is that a party should not be penalized for failing to anticipate a change in the governing legal principles during the life of his case. But there was no such change here. Rather, relying on *FieldTurf*, the court of appeals reasoned that it could bypass the rendition points altogether because it identified an error that, in its view, may have prevented the full development and presentation of the evidence. 716 S.W.3d at 769–70 (citing *FieldTurf*, 642 S.W.3d at 836). It explained: "Platinum appear[ed] to have relied on the spoliation instruction when determining which evidence to present to the jury, and it may have presented less evidence than it otherwise would have without the trial court's error." *Id.* at 770. Accordingly, without addressing any of the other appellate issues raised, the court of appeals exercised what it described as its "broad discretion to remand this case for further proceedings." *Id.*

The court of appeals' rationale does not withstand scrutiny. The court's belief that a spoliation instruction may have caused Platinum to refrain from offering evidence in support of its damages case does not relieve the appellate court of its duty to first consider issues that may require rendition. *See, e.g.*, *FieldTurf*, 642 S.W.3d at 836 ("[C]ourts of appeals . . . should consider [rendition] issues before ordering a remand."). Our rules of procedure require appellate courts to afford as

8

much relief as possible, and "courts of appeals are not at liberty to disregard them." *Bradleys' Elec.*, 995 S.W.2d at 677; *see also Huynh*, 694 S.W.3d at 690 ("[T]hese arguments . . . must be addressed first because they would provide greater relief."). "[T]his Court has long required that dispositive issues must be considered and resolved and that a judgment moving the case to the greatest degree of finality must be rendered." *Pool*, 124 S.W.3d at 201.

Rather than examine rendition points first, the court of appeals here limited its analysis to the spoliation instruction before ordering a new trial. Had it addressed other rendition challenges before remanding the case, its analysis may have obviated the need for a new trial, either entirely or with respect to some parties or issues. *Cf. CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000) (sustaining a legal sufficiency challenge and rendering judgment without considering venue, which would have required only a remand).

We recognize that some of our older cases suggest a remand may be warranted instead of rendition in some cases absent an intervening change in the governing law. *See, e.g., Williams v. Safety Cas. Co.*, 102 S.W.2d 178, 180 (Tex. 1937) (remanding because the case was "tried upon the wrong theory" and so "the facts have not been sufficiently developed to determine with any degree of certainty what judgment should be rendered"). But these cases do not allow a second chance to start anew merely because hindsight reveals that a party may—or should—have offered more or different evidence. *See Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 678 (Tex. 1979) ("The ends of justice

9

do not require a remand in every instance where . . . the evidence was not fully developed.").

Instead, we have remanded in the interest of justice in cases where the trial court erroneously precluded a party from presenting a necessary aspect of its case. *See, e.g.*, *Williams*, 102 S.W.2d at 179–80 (remanding for the development of evidence of good cause because the parties tried the case upon an erroneous theory). In *FieldTurf*, for instance, we cited as an example a case in which the parties tried the case premised on erroneous summary-judgment orders that relieved one party of its burden to prove causation and prevented the other party from proving its defenses. *See* 642 S.W.3d at 836 (citing *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 280 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)).

But such examples are rare. In the typical case, "[a]ll facts necessary to the determination of the rights of the parties . . . have been presented and passed on in the trial court," *Yarbrough v. Booher*, 174 S.W.2d 47, 49 (Tex. 1943), and the parties have had "ample opportunity" to produce evidence and present their case, *Nat'l Life & Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 911 (Tex. 1969). In those scenarios, as here, justice is not served by starting anew merely because hindsight may reveal flaws in a party's case. *See Pippen*, 439 S.W.2d at 667–68 (concluding remand was not appropriate despite the case having been tried under an incorrect legal theory because the trial court did not "restrict [the parties'] proof or submission to the jury" and "[t]he record contain[ed] the testimony of many witnesses and a huge amount of documentary evidence" presented over the six-week trial).

10

Nothing in this record suggests that the trial court's ruling on the spoliation instruction precluded Platinum's presentation of evidence or resulted in a record that was not fully developed. As we have frequently observed, remand is not appropriate in such cases. *See FieldTurf*, 642 S.W.3d at 836 ("The court of appeals provided no explanation, and we discern none, for its conclusion that the trial court's grant of summary judgment for [the defendant], even if erroneous, affected development or presentation of the evidence at trial . . . ."); *Lone Star Gas Co.*, 767 S.W.2d at 710 (concluding that the appellate court erred by remanding, noting that neither party "suggested that the evidence was not fully developed on this issue in the trial court"); *Mobil Oil Corp. v. Frederick*, 621 S.W.2d 595, 596 (Tex. 1981) (reversing the appellate court's decision to remand and noting that the plaintiff "did not urge that the evidence was not fully developed or that he had additional evidence to offer on the question"); *Blagg*, 438 S.W.2d at 911 (concluding a remand was not warranted and noting that there was no contention that the evidence had not been fully developed); *Jackson v. Ewton*, 411 S.W.2d 715, 719 (Tex. 1967) (reversing the court of appeals' decision to remand and noting that neither party argued in the trial court or their briefs that the case "had not been fully developed").

This is not one of the rare cases in which the error identified by the court of appeals—the spoliation instruction—prevented that court from being able to render a judgment if it had determined that the rendition points were meritorious. The case was on file for nearly five years before trial. During that time, Platinum retained a damages expert but decided not to offer his opinions at trial. Copper Creek claims

11

that Platinum also declined to depose any of the allegedly diverted workers, subpoena the residential projects' owners to help determine the number of workers on site at a given time, or use bank statements it unearthed in discovery. Nothing in the record supports a conclusion that Platinum would have offered different or additional damages evidence but for the trial court's decision to submit a spoliation instruction. On the contrary, Platinum repeatedly told the jury that no other damages evidence was available due to the covert nature of the theft coupled with spoliation. And even if additional damages evidence was available, the spoliation instruction did not preclude Platinum from presenting it at trial. On this record, the court of appeals' rationale for remanding the case for a new trial afforded an unjustified second bite at the apple—it did not serve the interest of justice.

We note in closing that embracing the required order of operations—rendition points first—is not aimless rule-following. Particularly after a jury trial, thorough appellate review of the case as a whole facilitates a robust harm analysis, should one prove necessary. This is, of course, because a harm analysis requires consideration of "the entire record of the case as a whole." *Horton v. Kan. City S. Ry. Co.*, 692 S.W.3d 112, 138 (Tex. 2024); *see also In re Est. of Poe*, 648 S.W.3d 277, 291–92 (Tex. 2022) (reviewing an erroneous jury instruction for harm by examining the evidence, examinations, and closing argument); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012) ("[W]e must evaluate the entire case from voir dire to closing argument, considering the evidence as a whole, the strength or weakness of the case, and the verdict.").

Thus, even assuming the court of appeals correctly concluded that the trial court erred in submitting the spoliation instruction—an issue we do not decide—its harm analysis should have been broader in scope. At a minimum, the court should have addressed factors pointing against its conclusion that the spoliation instruction was harmful as well as those that supported its conclusion.

## III. Conclusion

The court of appeals erred in concluding that a spoliation instruction was reversible error warranting a new trial without first considering appellate points that, if sustained, would have resulted in rendition. And its analysis regarding the harm caused by the spoliation instruction fell short because it did not assess the record as a whole. We reverse the court of appeals' judgment and remand the case to that court. *See* TEX. R. APP. P. 53.4; *First Bank v. Brumitt,* 519 S.W.3d 95, 112 (Tex. 2017) (holding that when issues are briefed in the court of appeals but not decided there, Rule 53.4 permits this Court to remand those issues to the court of appeals, even when no cross-petition has been filed).

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** April 17, 2026

13